JONES *v.* CUNNINGHAM, PENITENTIARY
SUPERINTENDENT.

No. 77.   Argued December 3, 1962.—Decided January 14, 1963.

*Daniel J. Meador* argued the cause for petitioner.
With him on the brief was *F. D. G. Ribble.*

*Reno S. Harp III,* Assistant Attorney General of Virginia, argued the cause for respondent.   With him on the brief was *Robert Y. Button,* Attorney General.

MR. JUSTICE BLACK delivered the opinion of the Court.

A United States District Court has jurisdiction under 28 U. S. C. § 2241 to grant a writ of habeas corpus "to a prisoner . . . in custody in violation of the Constitution . . . of the United States."   The question in this case is whether a state prisoner who has been placed on parole is "in custody" within the meaning of this section so that a Federal District Court has jurisdiction to hear and determine his charge that his state sentence was imposed in violation of the United States Constitution.[1]

---

[1] Parole in this case was granted while petitioner's appeal was pending in the Court of Appeals.

In 1953 petitioner was convicted in a Virginia state court of an offense requiring confinement in the state penitentiary, and as this was his third such offense he was sentenced to serve 10 years in the state penitentiary. In 1961 he filed this petition for habeas corpus in the United States District Court for the Eastern District of Virginia, alleging that his third-offender sentence was based in part upon a 1946 larceny conviction which was invalid because his federal constitutional right to counsel had been denied at the 1946 trial. The District Court dismissed the petition but the Court of Appeals for the Fourth Circuit granted a certificate of probable cause and leave to appeal *in forma pauperis*. Shortly before the case came on for oral argument before the Court of Appeals petitioner was paroled by the Virginia Parole Board. The parole order placed petitioner in the "custody and control" of the Parole Board and directed him to live with his aunt and uncle in LaFayette, Georgia. It provided that his parole was subject to revocation or modification at any time by the Parole Board and that petitioner could be arrested and returned to prison for cause. Among other restrictions and conditions, petitioner was required to obtain the permission of his parole officer to leave the community, to change residence, or to own or operate a motor vehicle. He was further required to make monthly reports to his parole officer, to permit the officer to visit his home or place of employment at any time, and to follow the officer's instructions and advice. When petitioner was placed on parole, the Superintendent of the Virginia State Penitentiary, who was the only respondent in the case, asked the Court of Appeals to dismiss the case as moot since petitioner was no longer in his custody. Petitioner opposed the motion to dismiss but, in view of his parole to the custody of the Virginia Parole Board, moved to add its members as respondents. The Court of Appeals dismissed, holding that the case was moot as to the super-

intendent because he no longer had custody or control over petitioner "at large on parole." It refused to permit the petitioner to add the Parole Board members as respondents because they did not have "physical custody" of the person of petitioner and were therefore not proper parties. 294 F. 2d 608. We granted certiorari to decide whether a parolee is "in custody" within the meaning of 28 U. S. C. § 2241 and is therefore entitled to invoke the habeas corpus jurisdiction of the United States District Court. 369 U. S. 809.

The habeas corpus jurisdictional statute implements the constitutional command that the writ of habeas corpus be made available.[2] While limiting its availability to those "in custody," the statute does not attempt to mark the boundaries of "custody" nor in any way other than by use of that word attempt to limit the situations in which the writ can be used. To determine whether habeas corpus could be used to test the legality of a given restraint on liberty, this Court has generally looked to common-law usages and the history of habeas corpus both in England and in this country.[3]

In England, as in the United States, the chief use of habeas corpus has been to seek the release of persons held in actual, physical custody in prison or jail. Yet English courts have long recognized the writ as a proper remedy even though the restraint is something less than close physical confinement. For example, the King's Bench as early as 1722 held that habeas corpus was appropriate to question whether a woman alleged to be the applicant's wife was being constrained by her guardians to stay away

---

[2] "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U. S. Const., Art. I, § 9.

[3] See, e. g., McNally v. Hill, 293 U. S. 131, 136 (1934); Ex parte Parks, 93 U. S. 18 (1876).

from her husband against her will.[4] The test used was simply whether she was "at her liberty to go where she please[d]."[5] So also, habeas corpus was used in 1763 to require the production in court of an indentured 18-year-old girl who had been assigned by her master to another man "for bad purposes."[6] Although the report indicates no restraint on the girl other than the covenants of the indenture, the King's Bench ordered that she "be discharged from all restraint, and be at liberty to go where she will."[7] And more than a century ago an English court permitted a parent to use habeas corpus to obtain his children from the other parent, even though the children were "not under imprisonment, restraint, or duress of any kind."[8] These examples show clearly that English courts have not treated the Habeas Corpus Act of 1679, 31 Car. II, c. 2—the forerunner of all habeas corpus acts—as permitting relief only to those in jail or like physical confinement.

Similarly, in the United States the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody. This Court itself has repeatedly held that habeas corpus is available to an alien seeking entry into the United States,[9] although in those cases each alien was free to go anywhere else in the world.

---

[4] *Rex* v. *Clarkson,* 1 Str. 444, 93 Eng. Rep. 625 (K. B. 1722).

[5] *Id.,* at 445, 93 Eng. Rep., at 625.

[6] *Rex* v. *Delaval,* 3 Burr. 1434, 97 Eng. Rep. 913 (K. B. 1763).

[7] *Id.,* at 1437, 97 Eng. Rep., at 914.

[8] *Earl of Westmeath* v. *Countess of Westmeath,* as set out in a reporter's footnote in *Lyons* v. *Blenkin,* 1 Jac. 245, 264, 37 Eng. Rep. 842, 848 (Ch. 1821); accord *Ex parte M'Clellan,* 1 Dowl. 81 (K. B. 1831).

[9] *E. g., Brownell* v. *Tom We Shung,* 352 U. S. 180, 183 (1956); *Shaughnessy* v. *United States ex rel. Mezei,* 345 U. S. 206 (1953); *United States ex rel. Knauff* v. *Shaughnessy,* 338 U. S. 537 (1950); *United States* v. *Jung Ah Lung,* 124 U. S. 621, 626 (1888).

"[H]is movements," this Court said, "are restrained by authority of the United States, and he may by habeas corpus test the validity of his exclusion." [10]   Habeas corpus has also been consistently regarded by lower federal courts as the appropriate procedural vehicle for questioning the legality of an induction or enlistment into the military service.[11]   The restraint, of course, is clear in such cases, but it is far indeed from the kind of "present physical custody" thought by the Court of Appeals to be required.   Again, in the state courts, as in England, habeas corpus has been widely used by parents disputing over which is the fit and proper person to have custody of their child,[12] one of which we had before us only a few weeks ago.[13]   History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus.

Respondent strongly urges upon us that however numerous the situations in which habeas corpus will lie prior decisions of this Court conclusively determine that

---

[10] *Shaughnessy* v. *United States ex rel. Mezei, supra* note 9, at 213.

[11] *E. g., Ex parte Fabiani,* 105 F. Supp. 139 (D. C. E. D. Pa. 1952); *United States ex rel. Steinberg* v. *Graham,* 57 F. Supp. 938 (D. C. E. D. Ark. 1944).

[12] *E. g., Boardman* v. *Boardman,* 135 Conn. 124, 138, 62 A. 2d 521, 528 (1948); *Barlow* v. *Barlow,* 141 Ga. 535, 536–537, 81 S. E. 433, 434 (1914); *In re Swall,* 36 Nev. 171, 174, 134 P. 96, 97 (1913) ("the question of physical restraint need be given little or no consideration where a lawful right is asserted to retain possession of the child").   See also *In re Hollopeter,* 52 Wash. 41, 100 P. 159 (1909) (husband held entitled to release of his wife from restraint by her parents); *In re Chace,* 26 R. I. 351, 358, 58 A. 978, 981 (1904) (wife held entitled to husband's society free of restraint by his guardian).

[13] *Ford* v. *Ford,* 371 U. S. 187 (1962).

the liberty of a person released on parole is not so restrained as to permit the parolee to attack his conviction in habeas corpus proceedings. In some of those cases, upon which the Court of Appeals in this case also relied, the petitioner had been completely and unconditionally released from custody; [14] such cases are obviously not controlling here where petitioner has not been unconditionally released. Other cases relied upon by respondent held merely that the dispute between the petitioner and the named respondent in each case had become moot because that particular respondent no longer held the petitioner in his custody.[15] So here, as in the cases last mentioned, when the petitioner was placed on parole, his cause against the Superintendent of the Virginia State Penitentiary became moot because the superintendent's custody had come to an end, as much as if he had resigned his position with the State. But it does not follow that this petitioner is wholly without remedy. His motion to add the members of the Virginia Parole Board as parties respondent squarely raises the question, not presented in our earlier cases, of whether the Parole Board now holds the petitioner in its "custody" within the meaning of 28 U. S. C. § 2241 so that he can by habeas corpus require the Parole Board to point to and defend the law by which it justifies any restraint on his liberty.

The Virginia statute provides that a paroled prisoner shall be released "into the custody of the Parole Board," [16] and the parole order itself places petitioner "under the

---

[14] *Parker* v. *Ellis,* 362 U. S. 574 (1960); *Zimmerman* v. *Walker,* 319 U. S. 744 (1943); *Tornello* v. *Hudspeth,* 318 U. S. 792 (1943).

[15] *United States ex rel. Lynn* v. *Downer,* 322 U. S. 756 (1944); *United States ex rel. Innes* v. *Crystal,* 319 U. S. 755 (1943); *Weber* v. *Squier,* 315 U. S. 810 (1942).

[16] Va. Code Ann. § 53–264.

custody and control of the Virginia Parole Board." And in fact, as well as in theory,[17] the custody and control of the Parole Board involve significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally. Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest, and temperate life. Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison to serve out the very sentence he claims was imposed upon him in violation of the United States Constitution. He can be rearrested at any time the Board or parole officer believes he has violated a term or condition of his parole,[18] and he might be thrown back in jail to finish serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime.[19] It is not rele-

---

[17] See *Anderson* v. *Corall,* 263 U. S. 193, 196 (1923) ("While [parole] is an amelioration of punishment, it is in legal effect imprisonment"); von Hentig, Degrees of Parole Violation and Graded Remedial Measures, 33 J. Crim. L. & Criminology 363 (1943).

[18] Va. Code Ann. §§ 53–258, 53–259. In fact, all the Board has to find is that there was "a probable violation."

[19] Even the condition which requires petitioner not to violate any penal laws or ordinances, at first blush innocuous, is a significant restraint because it is the Parole Board members or the parole officer who will determine whether such a violation has occurred.

vant that conditions and restrictions such as these [20] may be desirable and important parts of the rehabilitative process; what matters is that they significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do. Such restraints are enough to invoke the help of the Great Writ. Of course, that writ always could and still can reach behind prison walls and iron bars. But it can do more. It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the "custody" of the members of the Virginia Parole Board within the meaning of the habeas corpus statute; if he can prove his allegations this custody is in violation of the Constitution, and it was therefore error for the Court of Appeals to dismiss his case as moot instead of permitting him to add the Parole Board members as respondents.

Respondent also argues that the District Court had no jurisdiction because the petitioner had left the territorial confines of the district. But this case is not like *Ahrens* v. *Clark,* 335 U. S. 188 (1948), upon which respondent relies, because in that case petitioners were not even detained in the district when they originally filed their petition. Rather, this case is controlled by our decision in *Ex parte Endo,* 323 U. S. 283, 304–307 (1944), which held that a District Court did not lose its jurisdiction when a habeas corpus petitioner was removed from the district so long as

---

[20] The conditions involved in this case appear to be the common ones. See Giardini, The Parole Process, 12–16 (1959).

an appropriate respondent with custody remained. Here the members of the Parole Board are still within the jurisdiction of the District Court, and they can be required to do all things necessary to bring the case to a final adjudication.

The case is reversed and remanded to the Court of Appeals with directions to grant petitioner's motion to add the members of the Parole Board as respondents and proceed to a decision on the merits of petitioner's case.

*Reversed.*