**Irene ALVARADO, Reg. 17513–170, et al., Appellants,**

**v.**

**Virginia McLAUGHLIN, Warden, Federal Reformatory for Women, Alderson, West Virginia, et al., Appellees.**

**No. 73–1111.**

United States Court of Appeals, Fourth Circuit.

Argued July 18, 1973.

Decided Oct. 23, 1973.

Wilfred J. Ritz, Lexington, Va. (Richard J. Bolen, Noel P. Copen, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., and Fred M. Vinson, Jr., Washington, D. C., on brief), for appellants.

John A. Field, III, U. S. Atty., for appellees.

Before CRAVEN, BUTZNER and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

Section 7237(d), 26 U.S.C., provided, *inter alia,* that a convicted narcotic law offender was ineligible for parole consideration. That section, however, was repealed as a part of the enactment of the Comprehensive Drug Abuse Prevention and Control Act of 1970, effective May 1, 1971.[1] Under this Act, persons convicted of, narcotic law violations were entitled to the same parole consideration as other offenders had under the general parole provision set forth in Section 4202, 18 U.S.C. The Act included, though, a "savings" provision to the effect that, "[P]rosecutions for any violation of law occurring prior to the effective date of section 1101[2] * * * shall not be affected by the repeals or amendments made by such section * * * or abated by reason thereof."[3] The Board of Parole takes the position that, by virtue of this "savings" provision in the Act as well as the general "savings" statute,[4] any federal prisoner convicted of a narcotic law offense committed prior to May 1, 1971, does not qualify for administrative parole consid-

eration under the terms of the general parole statute. The petitioners, all federal prisoners convicted and sentenced on account of a narcotic law offense committed prior to May 1, 1971, filed this declaratory action to establish their eligibility for administrative parole consideration under Section 4202. The District Court, 355 F.Supp. 404, found that they did not qualify and dismissed their claim for relief. The petitioners have appealed. We reverse.

■ The contention of the Board, if sustained, would mean that federal prisoners, convicted of the same offense, would, as a matter of law, be treated differently in connection with the service of their sentences dependent upon whether their offense occurred before or after May 1, 1971. This contention is predicated on what the Board conceived to have been Congressional intent in enacting the new Act. Congressional intent to achieve such an irrational and manifest discrimination in treatment between prisoners convicted of the same offense, so inconsistent with fundamental fairness, should not be assumed, unless compelled by clearly expressed legislative purpose. We find no such expression of legislative intent in the Act. To the contrary, we are of the opinion that the language of the two "savings" provisions, relied on by the Board for its ruling, is plainly inapplicable as a bar to the rights of the petitioners under Section 4202 and that the position taken by the Board is at variance with the broad rehabilitative purposes of the Act itself.

■ The "savings" provision incorporated in the Comprehensive Drug Abuse Prevention and Control Act of 1970 [*i. e.,* Section 1103(a)][5] was intended merely to preserve the right of the Government to prosecute offenders whose offense occurred before the effective date of the new Act but had not been

---

1. 21 U.S.C. 801 et seq.

2. This is the section of the Act which repealed Section 7237(d).

3. Note under Section 171, 21 U.S.C.

4. Section 109, 1 U.S.C.

5. Pub.L. 91–513, 84 Stat. 1236, 21 U.S.C. 801 et seq.

theretofore prosecuted. The key word in the "savings" provision is "prosecution". That term fixed the reach of the provision. The grant of parole, as authorized under Section 4202 is a part of an administrative proceeding, conducted not by the Court but by an administrative body, and conducted "long after sentence has been entered and the prosecution terminated." Bradley v. United States (1973) 410 U.S. 605, 611, n. 6, 93 S.Ct. 1151, 1156, 35 L.Ed.2d 528.[6] It "in no way affects the prosecution of the case," United States v. Stephens (9th Cir. 1971) 449 F.2d 103, 105, and is in no respect a part of the "prosecution". Section 1103(a), confined as it is specifically to the concept of "prosecution", presents thus no bar to the right of the petitioners to qualify for consideration for parole under Section 4202 and cannot justify the arrant discrimination inherent in the position taken by the Board.

Neither does the general "savings" statute, Section 109, 1 U.S.C., foreclose the petitioners from a right to be considered for parole. That statute, "intended to obviate the common law's technical abatement of a prosecution by the repeal of the statute under which it proceeded,"[7] provides that, "[T]he repeal of any statute shall not have the effect to release or extinguish any penalty * * * incurred under such statute, unless the repealing Act shall so expressly provide * * *." It seems clear that the term "penalty" as used in this statute was intended to cover the same concept as the term "prosecution" in Section 1103(a) and is to be given no broader meaning. See United States v. McGarr (7th Cir. 1972) 461 F.2d 1, 4–5.

"Penalty" in the statute refers to and embraces simply the sentence imposed by the Court. That sentence is in no way voided or "abated" by the subsequent grant of administrative parole. Parole is not "a suspension of sentence", Jenkins v. Madigan (7th Cir. 1954) 211 F.2d 904, 906, cert. denied 348 U.S. 842, 75 S.Ct. 63, 99 L.Ed. 664; it does not remove or make invalid the sentence imposed, Marrero v. Warden, supra; it is still "a form of custody", Padilla v. Lynch (9th Cir. 1968) 398 F.2d 481, 482, and "is in legal effect imprisonment", Anderson v. Corall (1923) 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247; in summary, it "is not a release of the prisoner from all disciplinary restraint but is rather merely 'an extension of the prison walls'; and the prisoner while on parole remains 'in the legal custody and under the control of' the Parole Board," United States v. Nicholson (4th Cir. 1935) 78 F.2d 468, 469–470, cert. denied 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405. So regarded, administrative parole [8] does "not have the effect to release or extinguish any penalty" imposed by the sentence of the Court and is accordingly not within the terms of Section 109.

Not only is there nothing in the law relied on by the Board to sustain this denial of eligibility for parole consideration to the petitioners but also, the Congressional intent in enacting the Comprehensive Act that repealed Section 7237(d) shows, to our mind, an unmistakable legislative purpose contrary to that contended for by the Board. It is obvious that Congress, in removing the ban on administrative parole for narcotic law offenders in the Comprehensive Act of 1970, was expressing a legislative

---

6. See, also, Morrissey v. Brewer (1972) 408 U.S. 471, 486, 92 S.Ct. 2593, 2603, 33 L.Ed. 2d 484:

"The granting and revocation of parole are matters traditionally handled by administrative officers."

7. Marrero v. Warden (3d Cir. 1973) 483 F. 2d 656.

8. The right of the judge to provide for parole as a part of his sentence is quite differ-

ent from the "availability of parole under the general parole statute"; the reason is that one is a part of the sentence or "penalty", the other is an administrative action "made long after sentence has been entered and the prosecution terminated." See, United States v. Huguet (2d Cir. 1973) 481 F.2d 888, 891.

judgment that an intelligent program of rehabilitation, in which administrative parole should be an available tool, was the preferred method of dealing with such offenders. If that was the Congressional purpose, it is difficult to find any basis in that Act, much less in reason or in fairness, for treating differently prisoners whose narcotic law offenses took place before May 1, 1971 from those whose offenses occurred after that date. We will not assume that Congress intended any such irrational purpose or intent.

Compounding the discrimination that the Board has made between offenders sentenced before and after May 1, 1971 is the incongruous position taken by the Board in cases arising in the Ninth and Seventh Circuits, where the Courts have found that the Board does have parole authority, and those arising in other Circuits where the Courts have not passed on the issue. In the case of any prisoner in the Ninth and Seventh Circuits the Board finds parole eligibility; in all other Circuits it denies eligibility. Such a disparity in treatment is intolerable. If the Board acquiesces in the decisions made by the Ninth and Seventh Circuits, it should in common justice extend the rights thus acquiesced in to all prisoners under its control. Our decision, so far as prisoners in this Circuit are concerned, assures to them equality of treatment with prisoners in the Ninth and Seventh Circuits. We assume the Board will extend the same rights to prisoners from the Third and District of Columbia Circuits in view of the decisions in United States v. Marshal, 13

Cr.L. 2547 and Marrero v. Warden, *supra*, 483 F.2d 656.

We recognize, as the able District Judge observed, that there are decisions indicating a contrary conclusion to that expressed by us.[9] A majority of the Courts that have examined the question have, however, decided as we have and we find their reasoning convincing.[10]

This proceeding is accordingly remanded to the District Court with direction to enter a declaratory judgment that the petitioners are eligible for consideration for parole on the terms and subject to the conditions set forth in Section 4202, 18 U.S.C.

---

9. Many of these cases dealt specifically with the power to sentence under the old Act, not to the subsequent, administrative effectuation of that sentence later. *See* United States v. Fiore (2d Cir. 1972) 467 F.2d 86, 88–89, cert. den. 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181; United States v. De Simone (2d Cir. 1972) 468 F.2d 1196, 1198–1199, cert. den. 406 U.S. 959, 93 S.Ct. 1499, 36 L.Ed.2d 188; Page v. United States (10th Cir. 1972) 459 F.2d 467, 468, cert. den. 410 U.S. 989, 93 S.Ct. 1506, 36 L.Ed.2d 187. Whether *Fiore* and *De Simone* remain the law of the Second Circuit is doubtful in view of the

decision of that Circuit in United States v. Huguet (2d Cir. decided July 9, 1973), 481 F.2d 888.

10. *See* United States v. Marshal, *supra*; Marrero v. Warden, *supra*; United States v. McGarr, *supra*; United States v. Stephens, *supra*; United States v. Robinson (7th Cir. 1972) 466 F.2d 780, 782; United States v. Pratter (7th Cir. 1972) 465 F.2d 227, 233.