**Robert HOWIE, Petitioner,**

v.

**J. E. BYRD, Superintendent, Yancey County Unit, North Carolina Department of Correction, Respondent.**

**No. C-C-73-237.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

May 14, 1975.

No appearance for petitioner.

Richard N. League, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for respondent.

### ORDER

McMILLAN, District Judge.

In September, 1969, Robert Howie, petitioner, was brought to trial in Mecklenburg County, North Carolina, Superior Court, charged with the crime of

breaking and entering a building. He pleaded guilty and was sentenced to prison for a term of five to seven years. He was confined to prison until December 4, 1970, at which time he was released from prison and placed on parole under the supervision of the North Carolina Board of Paroles (now the Parole Commission). His conduct did not conform to the conduct expected of him by his parole officer, and on March 10, 1972, the parole officer filed a report recommending that Howie's parole be permanently revoked and that he be returned to the prison system. On March 13, 1972, Howie's parole was revoked on a temporary basis by the Parole Commission and on March 16, 1972, he was arrested and taken back into custody.

The violations which gave rise to the arrest and commitment of Howie on March 16, 1972, were listed by the supervising parole officer in his violation report of March 8, 1972, as follows:

### "VIOLATIONS

| (Specific charge/technical violation) | (Date Occurred) |
|---|---|
| 1. Failing to support his family | 1/20/72 |
| 2. Assaulting A. McDowell in his girlfriend's home | 2/20/72 |
| 3. Refusing to work regular and abide by recommendation of parole officer | past 12 months |
| 4. Fired by first employer 1/10/72 | |
| 5. Fired by second employer 2/29/72 | |

### SUMMARY
(How violation occurred)

Parolee had been staying with his wife for the past 3 months on the average of about two nights per week. The remainder of the time he has been living with a married woman by the name of Geneva McDowell and another woman by the name of Hopper. The subject assaulted Geneva McDowell's husband in the McDowell home and drove him from the residence and threatened his life if he returned. The subject has refused to work for the past year regularly. This officer has tried in many ways to obtain a satisfactory plan of employment for him but it is an established fact that he is not going to work. The subject has been drinking and hiding out from this officer for more than a week now and he is aware of the fact that this officer is searching for him. He prefers to do as he pleases and completely ignores suggestions and recommendations of this officer.

### RECOMMENDATIONS

It is respectfully requested that this subject be permanently revoked and returned to the prison system due to his conduct and refusal to work.

March 8, 1972 Hal Dedmon 3/10/72 bfc

_____

Parole Officer"

On June 28, 1972, three and a half months after the temporary revocation, Howie was given a hearing on the question of the permanent revocation of his parole; and the parole was revoked permanently on July 12, 1972, with findings as follows:

"Admits he stayed with married woman, 'changed' jobs without permission—claims McDowell came to woman's house bleeding, but denies he injured her. Apparent he did not work regular and because of absence he was fired."

Howie has exhausted state remedies and now, in this habeas corpus proceeding, seeks credit on his prison term for the approximately fifteen and one-half months from December 4, 1970, until March 16, 1972, during which time he was at large under the supervision of the Parole Commission.

Revocation of parole is governed by North Carolina General Statutes, § 148–61.1, which in 1972 read as follows:

"§ 148–61.1. Revocation of parole by Board; conditional or temporary revocation.—(a) The Board of Paroles may at any time, in its discretion, revoke the order of parole of any parolee. The time a parolee is at liberty on regular parole shall not be counted as any portion of or part of the time served on his sentence, and if any parolee shall have his parole revoked, he shall thereafter be returned to the penal institution having custodial jurisdiction over him.

"(b) The Board of Paroles may, in its discretion, enter an order revoking a parole conditionally or for a temporary period of time. Upon issuing such order of conditional or temporary revocation, such parolee may be arrested without warrant by any peace officer or parole officer. After such conditional or temporary revocation of parole, the parolee shall be held for a reasonable length of time during which the Board of Paroles shall determine whether or not the conditions of said parole have been violated. If

it is determined by the Board of Paroles that the conditions of said parole have been violated, the Board of Paroles may in its discretion revoke the order of parole. If it is determined by the Board of Paroles that there has been no violation of the conditions of said parole, then such parolee or paroled prisoner shall be reinstated upon his original parole."

The revocation of parole is thus in the absolute uncontrolled discretion of the parole authorities. No standard is set anywhere for their judgments.

When he was released on parole, petitioner signed a form "Parole Agreement" reading as follows:

"In accepting this parole I understand that the North Carolina Board of Paroles may at any time for reason or reasons satisfactory to itself revoke, modify, or change its terms. I also understand that I am under the legal custody of the Board of Paroles until duly discharged by the Board. I understand that should I violate parole the Board of Paroles may cause me to be returned to prison without notice and without hearing. In accepting this parole I agree to abide by the following rules:

1. I will report promptly to my parole officer whenever instructed to do so and in the manner prescribed by my parole officer and the Board of Paroles.

2. I WILL NOT USE INTOXICATING BEVERAGES OR NARCOTICS WHILE ON PAROLE. (IT IS UNDERSTOOD THAT NARCOTICS PRESCRIBED BY A LICENSED PHYSICIAN MAY BE USED AS PRESCRIBED.)

3. I will obey all municipal, county, state, and federal laws, ordinances and orders and avoid people and places with bad reputations.

4. I will not leave my county of residence without obtaining permission from my parole officer. I will not leave the State of North

Carolina without permission from the Board of Paroles.

5. I will work steadily at an approved job and not change jobs or residence without permission from my parole officer. If I am discharged from my job or evicted from my home, I will notify my parole officer immediately.

6. I will not own or operate any motor vehicle without permission from my parole officer.

7. I will not own or possess any firearms or deadly weapon without permission from my parole officer.

8. I will maintain steady employment and support any person dependent on me to the best of my ability.

9. I will not visit any place where prisoners are confined or associate or communicate with inmates of penal institutions or persons having a criminal or police record without permission from my parole officer.

10. I will not marry or re-marry without permission from my parole officer.

11. I will not incur any unnecessary indebtedness or make any installment purchases or loans without permission from my parole officer.

12. I will allow my parole officer to visit and inspect my home or place of employment at any time and will answer all inquiries from the Board of Paroles or its agents truthfully and to the best of my ability.

13. I will report immediately to my parole officer any incident that might lead to my arrest while I am on parole.

14. I do hereby waive extradition to the State of North Carolina from any state of the United States and also agree that I will not contest any effort by any state to return me to the State of North Carolina.

15. I agree to abide by any special conditions the Board of Paroles deems necessary to the supervision of my case. If I am paroled or transferred to another state, I agree to abide by any parole rules in effect in that state.

I have read or have had read to me the foregoing conditions of my parole. I fully understand them and will strictly follow them.

DATE _____ 12/9/70 _____ SIGNED _____ Robert Howie _____

WITNESS _____ Hal Dedmon _____ TITLE _____ Parole Officer _____

———◆———

The Board of Paroles realizes that under the American system compulsory church attendance may be regarded as infringement upon the idea of separation of church and state and therefore, does not include this as a specific condition of parole. However, the Board wishes the parolee to know that in its opinion no more important element enters into the proper rehabilitation of the individual than does religion. The Board strongly recommends to the parolee that he or she immediately upon release on parole communicate with a minister, priest, or rabbi of the parolee's choosing and secure the assistance of such person in helping work out the parolee's problems. The Board suggests to the parolee regular church attendance and active membership by the parolee in a church of the parolee's choice.

Ordinarily parole supervision will last at least as long as it would have taken you to complete your sentence by law. However, you must be on pa-

role at least one year before you can be discharged. Very few with a good parole record are required to be on parole more than five years. If your parole is revoked, the time you are on liberty on a regular parole will not count as time served on your sentence."

Although the Parole Commission had discretion to revoke the parole, they had no discretion under the statute to "let the punishment fit the crime"; and pursuant to the statute Howie has been in prison and is slated to remain in prison subject to the future mercy of the Parole Commission for the entire five and three-fourths years which remained on his original five-to-seven-year sentence when parole was granted.

 The contentions which arise in petitioner's favor are multiple and serious:

1. *Parole under the conditions required is punishment.*—The usual parole conditions place drastic restrictions upon the parolee's mobility, his drinking practices, his associates, his operation of a motor vehicle, and upon his freedom to marry or re-marry, to make debts or purchases, to accept or change employment, or to change his residence. He has to report to the parole officer when and as directed, to submit to inspections at home and at work, to waive extradition from any other state, and to abide by any special conditions. He must pledge himself (item 13 of his pledge) to abandon his privilege against self-incrimination by reporting "immediately to my parole officer any incident that might lead to my arrest while I am on parole." It is also obvious that if he does not wish to run the risk of displeasing the Parole Commission he must become a pillar in a church of choice. (Most of us, I hope, agree that church activity is desirable conduct; whether it should be impliedly or explicitly *required* by the government is another question.) The laudable aim of these parole restrictions is rehabilitation. A financial result of these restrictions is that half or two-thirds of the people serving sentences at any one time are not in physical custody but are out supporting themselves and therefore the prisons do not have to house them all. Nevertheless, it is a fiction to contend that parole is not essentially punishment. Capable courts have recognized this. The Supreme Court of the United States in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1962) spoke as follows:

"The Virginia statute provides that a paroled prisoner shall be released 'into the custody of the Parole Board,' and the parole order itself places petitioner 'under the custody and control of the Virginia Parole Board.' And in fact, as well as in theory, the custody and control of the Parole Board involve significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally. Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, and keep away from undesirable places, and live a clean, honest, and temperate life. Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison to serve out the very sentence he claims was imposed upon him in violation of the United States Constitution. He can be rearrested at any time the Board or parole officer believes he has violated a term or condition of his parole, and he might be thrown back in jail to finish

serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime. It is not relevant that conditions and restrictions such as these may be desirable and important parts of the rehabilitative process; what matters is that they significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do. Such restraints are enough to invoke the help of the Great Writ." (371 U.S. 236, 241–43, 83 S. Ct. 373, 376–77, 9 L.Ed.2d 285.)

Similar views were expressed by the Fourth Circuit Court of Appeals in Alvarado v. McLaughlin, 486 F.2d 541, 544 (4th Cir. 1973), as follows:

". . . Parole is not 'a suspension of sentence', Jenkins v. Madigan (7th Cir. 1954) 211 F.2d 904, 906, cert. denied 348 U.S. 842 [75 S.Ct. 63, 99 L.Ed. 664]; it does not remove or make invalid the sentence imposed, Marrero v. Warden, [3 Cir., 483 F.2d 656] supra; it is still 'a form of custody', Padilla v. Lynch (9th Cir. 1968) 398 F.2d 481, 482, and 'is in legal effect imprisonment', Anderson v. Corall (1923) 263 U.S. 193, 196 [44 S.Ct. 43, 68 L.Ed. 247]; in summary, it 'is not a release of the prisoner from all disciplinary restraint but is rather merely "an extension of the prison walls"; and the prisoner while on parole remains "in the legal custody and under the control of" the Parole Board,' United States v. Nicholson (4th Cir. 1935) 78 F.2d 468, 469–470, cert. denied 296 U.S. 573 [56 S.Ct. 118, 80 L.Ed. 405]."

2. *Revocation of parole extends the period of active punishment beyond the period ordered by the responsible sentencing authority, the court.*—Howie's original sentence was five to seven years. The parole revocation and his reincarceration to serve the entire remaining portion of that term in prison have now added fifteen and one-half months to his period of punishment, unless the Parole Commission in its absolute and uncontrolled discretion **decides** to do better by him.

3. *The resentencing by the Parole Commission lacks judicial standards and safeguards.*—Revocation of parole is a matter of total discretion. No standard whatever controls. There is no appeal from the Parole Commission's exercise of discretion. Commission members need not be (though they often are) lawyers. They need not know any law. They need not follow any legal standard. Under North Carolina General Statutes § 148–58, all persons are eligible to be considered for parole when they have served one-fourth of their minimum sentence (ten years if the sentence is life imprisonment). The Parole Commission thus has absolute discretion to retain or to release any prisoner for all or any part of the last seventy-five percent of the time allotted by the judge. Three-fourths, therefore, of the usual prison sentence is within the untrammelled control of the Parole Commission, and only one-fourth is subject to the stringent and principled sanctions which control trial judges in passing out sentences. Judges who order people to prison are required in some places to be lawyers. Gordon v. Justice Court, Cal. Supreme Court, 115 Cal.Rptr. 632, 525 P.2d 72 (1974). Judges are required to determine guilt or innocence under due process standards; to consider carefully the background, capacity, personal situation, rehabilitative needs and other characteristics of a defendant; and to give him the right of allocution in a sentencing hearing before arriving at a sentence. Prominent judges are now talking about sentencing panels composed of two or many judges. The much more practicable and desirable alternative of appellate review of sentences is under wide discussion. The parole process makes a mockery of the pursuit of judicial excellence in sentencing; while

judges strive for perfection as to the one-fourth of the punishment which they control, parole officers are unbound in their exercise of power over the three-fourths or more of punishment which they control. We strain at a gnat and swallow a camel. Judicial and legislative control over the *fact* of punishment (as opposed to the *theory* of sentencing) is largely illusory.

4. *The prisoner has been subjected to double jeopardy and increased punishment because of non-criminal conduct.*—Since living under the conditions of parole is punishment and since the necessary result of parole revocation is to restore the entire original sentence, there has been double punishment without a second trial. The double jeopardy clause prohibits two *prosecutions* for the same offense; it certainly ought to prevent two *punishments*.

5. *The petitioner did not "ask for" nor "trigger off" the processes which led to his extended sentence.*—He did not create the parole system nor had he the power to require his original parole; that was done by the statute. His parole and its myriad conditions were part of the regular processes of state law and had nothing to do with any effort on his part to obtain a new trial or a retrial of his case. His acquiescence in the conditions of parole was not a pursuit of one of the "options" available to the defendant as a part of the criminal process which resulted in his original sentence. Where punishment is increased after conviction by the trial court but not as an option in the criminal process pursued by the defendant, such increase in punishment is unconstitutional. The decisions in United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), Ex Parte Lange, 85 U.S. 163 (18 Wall.), 21 L.Ed. 872 (1874), North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and similar cases are not in point. "[R]evocation of parole is not part of a criminal prosecution," Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L. Ed.2d 484 (1972), but it does entail a "loss of liberty" that is a "serious deprivation," Gagnon v. Scarpelli, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

6. *The punishment does not fit the crime.*—There is no rational connection between the non-criminal conduct of which the Parole Commission convicted Howie and a prison sentence of five and three-fourths years. Changing jobs, drinking alcohol, failing to support dependents, failing to please the probation officer, and "living with" a woman not his wife are not shown to be criminal acts. They are not acts calculated to produce domestic harmony; but numerous public and private figures from King David down to the present would be shocked to realize that five and three-fourths years in prison is reasonable punishment for such conduct.

7. *Due process of law is violated.*— Howie has lost fifteen and one-half months of liberty; his prison term has been extended fifteen and one-half months without the procedural or substantive protections which we refer to as "due process of law." The role of the court in guaranteeing a fair trial and sentencing has been reduced to that of a bit player; under these statutes executive discretion, though in the hands of presumably good and well-intentioned men, holds center stage.

Courts generally have thus far denied claims like this. This court thought at the outset that this claim should routinely be denied. A recital of the underlying facts, however, makes a strong case for relief. No court whose opinion has been read has apparently faced and reckoned with all the considerations outlined above. If parole is "custody," or "an extension of the prison walls," or "in legal effect imprisonment," as the Fourth Circuit Court of Appeals correctly observed in Alvarado v. McLaughlin, quoted above, then for the above rea-

sons it ought to count towards service of the original sentence.

Parole is a benefit to taxpayers because through parole about two-thirds of the sentences being served at any given time are being served "outside the walls," at no cost other than parole supervision. The prisons thus need be only about one-third the size and expense that might otherwise be required.

Parole also benefits prisoners and society generally by getting prisoners back into society and, usually, back to work, where rehabilitation, if possible, can take place.

It has been suggested that the entire remaining period of possible confinement must be available throughout parole as a weapon to keep parolees "in line," and that without the threat of re-commitment for the entire period parole authorities have no sanction to require obedience during the latter stages of a parole. That may possibly be true. Nevertheless, a parolee, like others, remains subject to the criminal laws, which carry their own sanctions; and if a parolee makes it until the latter stages of parole without criminal conduct, the parole in fact has been essentially successful.

This is a habeas corpus case involving directly the liberty of one prisoner. Therefore, the court is not authorized nor inclined to make any comment on the possible constitutionality of some modified procedure under which the parole authorities might determine the period of re-incarceration after parole violation in light of the seriousness of the offenses which occasioned the revocation.

## ORDER

The writ of habeas corpus is granted and defendants are directed to credit the time spent by petitioner on parole against his active prison sentence.