238 S.E.2d 529 (1977)
James CONNER
v.
Harry GRIFFITH, Warden, Huttonsville Correctional Center.
No. 13911.
Supreme Court of Appeals of West Virginia.
September 20, 1977.
Dissenting Opinion November 1, 1977.
James M. Haviland, Charleston, for relator.
Chauncey H. Browning, Jr., Atty. Gen., William D. Highland, Asst. Atty. Gen., Charleston, for respondent.
*530 MILLER, Justice:
In this habeas corpus case we are asked to consider the constitutionality of that portion of W.Va.Code, 62-12-19, which permits the Board of Probation and Parole to reimprison a parole violator without crediting the time served on parole against the original sentence.[1]
In 1973, petitioner was convicted of grand larceny and sentenced to the Huttonsville Correctional Center for one to ten years. On February 5, 1975, he was placed on parole. He remained on parole until November, 1976, when he was arrested for parole violation. Petitioner's parole was subsequently revoked and he was returned to Huttonsville to serve the remaining portion of his original sentence without credit for the 21 months served on parole. Petitioner's parole revocation was based on the fact that he had traveled out of State to marry a woman with whom, by the terms of his parole, he was forbidden to associate.
Petitioner contends that the parole board's refusal to credit the time served on parole against his original sentence violates the Double Jeopardy Clause of the West Virginia Constitution, Article III, Section 5. Petitioner asserts that unless the time he served on parole prior to its revocation is credited against his sentence, he will be subjected to serving an additional 21 months beyond the maximum sentence originally imposed. He claims this additional time violates the constitutional prohibition against multiple punishments for the same offense, which is a part of the double jeopardy provision.
The federal Fifth Amendment constitutional guarantee against double jeopardy, made mandatory on the State through the Fourteenth Amendment, has been held to contain three separate constitutional protections and, in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), these were summarized as follows:
"It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." [395 U.S. at 717, 89 S.Ct. at 2076]
As noted in Pearce, the leading case involving the Double Jeopardy Clause as it relates to multiple punishments for the same crime is Ex parte Lange, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872 (1874), where the Court stated:
"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense." [18 Wall. at 168, 85 U.S. at 168]
Under Article III, Section 5 of the West Virginia Constitution, a similar guarantee against double jeopardy exists. Although we have not had occasion to define its full scope, our Double Jeopardy Clause provides immunity from further prosecution where a jury in a court having jurisdiction has acquitted the accused. Ex parte Bornee, 76 W.Va. 360, 85 S.E. 529 (1915). It also protects against a second prosecution for the same offense after conviction. State v. Holland, 149 W.Va. 731, 143 S.E.2d 148 (1965); State v. Kiger, 103 W.Va. 55, 136 S.E. 607 (1927).
It is our view that Article III, Section 5 of the West Virginia Constitution is, at least, coextensive with the three principles set out in North Carolina v. Pearce, supra, and prohibits multiple punishments for the same offense.
The question of whether the failure to credit time served on parole violates our constitutional prohibition against double jeopardy can best be answered by analyzing the nature of parole.
Since the inception of the first parole statute in the State of New York in 1877,[2] the courts have been slow in attempting *531 any extensive inquiry into the constitutional aspects of the parole system.[3]
In recent years, increasing judicial attention has been given the parole system on two principal constitutional grounds. The first centers on the procedural due process rights required at the time of a parole revocation. See Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Courts also have considered whether the failure to credit time served on parole against the underlying sentence violates double jeopardy.[4] While some courts have held the constitutional prohibition against double jeopardy applies and thus requires credit for time served on parole,[5] a majority of the courts have declined to apply this constitutional standard.[6]
The rule prohibiting credit for time served on parole where there has been a revocation has been sharply criticized.[7] A number of states have solved the problem by enacting statutes which specifically require credit for time served on parole upon its revocation.[8] Such statutes are consistent with the recommendations of the American Law Institute, Model Penal Code § 305.17(1) (1962);[9] National Council on Crime and Delinquency, Standard Probation and Parole Act § 27 (1955);[10] National Advisory Commission on Criminal Justice Standards and Goals, Report on Corrections § 16.15(3) (1973).[11]
Morrissey, supra, sought to rationally analyze the nature of parole as it relates not only to the parolee but to its function in society. It eschewed labeling parole as a "privilege", a concept that has in the past retarded any real analysis of the fundamental concepts of parole.[12]Morrissey focused *532 on the fact that parole is a part of the rehabilitative process. It pointed out that not only does the prisoner gain by a reduction in the restraints on his freedom, but society also benefits by a reduction in the cost of his upkeep. However, Morrissey emphasized that a parolee still has substantial restrictions imposed upon his freedom arising from the conditions of his parole.
The nature of the restrictions surrounding a person on parole has been treated at some length in Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963):
"And in fact, as well as in theory, the custody and control of the Parole Board involve significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally. Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest, and temperate life. Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison . . . " [371 U.S. at 242, 83 S.Ct. at 376]
In Alvarado v. McLaughlin, 486 F.2d 541 (4th Cir. 1973), the following comments were made regarding the nature of parole:
"Parole is not `a suspension of sentence', Jenkins v. Madigan (7th Cir. 1954) 211 F.2d 904, 906, cert. denied 348 U.S. 842, 75 S.Ct. 63, 99 L.Ed. 664; it does not remove or make invalid the sentence imposed, Marrero v. Warden, supra [(3d Cir.) 483 F.2d 656]; it is still `a form of custody', Padilla v. Lynch (9th Cir. 1968) 398 F.2d 481, 482, and `is in legal effect imprisonment', Anderson v. Corall (1923) 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247; in summary, it `is not a release of the prisoner from all disciplinary restraint but is rather merely "an extension of the prison walls"; and the prisoner while on parole remains "in the legal custody and under the control of" the Parole Board,' United States v. Nicholson (4th Cir. 1935) 78 F.2d 468, 469-470, cert. denied 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405." [486 F.2d at 544]
It cannot be denied that a person placed on parole in this State has substantial restraints on his freedom. In addition to the statutory conditions imposed by W.Va.Code, 62-12-17, the Director of the Division of Correction has promulgated eleven other restrictions pursuant to W.Va.Code, 62-13-2(b), many of which do not directly relate to the prevention of criminal activity and any of which, if violated, can result in the revocation of parole.[13]
*533 As one commentator has observed, the regulations governing a parolee's conduct require that he "lead a childlike and pastoral life."[14] Others have pointed out that such regulations impinge on human rights and reflect obsolete criminological concepts.[15] One might conclude that they are designed to assure that he will not succeed.
The breach of these administrative regulations constitutes a major ground for parole revocation in this State. For the five-year period ending June 30, 1976, approximately 69 percent of all parole revocations were based upon "technical" violations as distinguished from the more serious felony violations.[16]
This Court considered the due process requirements applicable to parole revocation in Dobbs v. Wallace, W.Va., 201 S.E.2d 914 (1974), and applied the Morrissey standards with one notable addition. We held that counsel must be appointed for an indigent parolee, a right not required by Morrissey.
In the related field of probation revocation, this Court in State ex rel. Strickland v. Melton, 152 W.Va. 500, 165 S.E.2d 90 (1968), followed the due process standards set in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), including the appointment of counsel at a probation revocation hearing. Even though the later case of Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), indicated that due process guarantees do not require the appointment of counsel in all cases where there is a revocation of probation, this Court in Louk v. Haynes, W.Va., 223 S.E.2d 780 (1976), did not retreat from its previous constitutional principle that counsel must be furnished.
Additionally, Louk went on to require the presence of counsel where the conditions of probation are modified. 223 S.E.2d at 787. Louk also correlated the due process rights required at a probation revocation hearing with those at a parole revocation hearing.[17]
Clearly from the foregoing cases this Court has accorded substantial due process rights to both probationers and parolees and has set, under Article III, Section 10 of the West Virginia Constitution, a standard for due process beyond that established by the United States Supreme Court in this area of the law.
*534 Turning from due process considerations to the constitutional prohibition against multiple punishments embodied in the Double Jeopardy Clause, we are impressed by the analysis of parole set out in Morrissey. Parole is earned as a result of a prisoner's rehabilitative efforts during his confinement in a penal institution. The granting of parole is a further step in the total rehabilitative process that motivates him to become a self-sustaining and law-abiding member of society. It enables him to live outside the prison while still providing substantial restrictions on his freedom. Parole encourages rehabilitation and at the same time reduces the cost of upkeep that is required by total confinement.
Time spent serving a sentence does not depend on the manner or location in which it is served. There are, to be sure, different degrees of confinement recognized in any penal system. The fact that some confinements are less restrictive than others should have no bearing in computing the time served on the sentence.
Furthermore, it is obvious that if probation or parole is not revoked, the time served under these less restrictive conditions will count on the sentence. State v. Shawyer, 154 W.Va. 522, 177 S.E.2d 25 (1970). It is difficult to perceive why, if the time served counts where there is no violation, the same time served until the violation should not also count.
The violation of the terms of parole cannot furnish grounds for the imposition of additional punishment unless the act is criminal in nature. Where a crime has been committed on parole, the State is free to charge and try the parolee for the crime committed. In addition, it can revoke his parole under those rules which prohibit him from committing crimes while on parole.
The revocation of parole relates to the underlying sentence and it is under this sentence that the parolee is returned to confinement. To forfeit the time served on parole has the direct effect of increasing the time he is subject to serve on the underlying sentence. For this reason, it must be deemed to constitute a multiple punishment for the same offense and is a violation of the Double Jeopardy Clause of the West Virginia Constitution, Article III, Section 5.[18]
Our decision is part of an increasing trend in both federal and state courts to apply substantive constitutional standards of double jeopardy or equal protection to forbid the withdrawal of time spent in custody from the underlying sentence. See, e. g., Williams v. Illinois, 399 U.S. 235, 26 L.Ed.2d 586, 90 S.Ct. 2018 (1970); North Carolina v. Pearce, supra; Durkin v. Davis, 538 F.2d 1037 (4th Cir. 1976); Ange v. Paderick, 521 F.2d 1066 (4th Cir. 1975); Wilson v. State of North Carolina, 438 F.2d 284 (4th Cir. 1971); Wright v. Maryland Penitentiary, 429 F.2d 1101 (4th Cir. 1970); Klimas v. State, 75 Wis.2d 244, 249 N.W.2d 285 (1977); Laden v. Warden, 169 Conn. 540, 363 A.2d 1063 (1975); Reanier v. Smith, 83 Wash.2d 342, 517 P.2d 949 (1974); Gelis v. State, 287 So.2d 368 (Fla.App.1973).
For the reasons stated above, the writ of habeas corpus is awarded and petitioner shall be entitled to have credited to his underlying sentence the time he served on parole.
Writ awarded.
CAPLAN, Chief Justice, dissenting:
Respectfully, but earnestly, I dissent from the Court's decision embodied in the majority opinion. It is universally accepted that no man can be twice lawfully punished for the same offense. In that proposition I am in full agreement with the majority. I *535 vigorously disagree, however, with its characterization of the failure to allow credit on the sentence for the time spent on parole as the imposition of multiple punishments for the same offense. Thus, I am in firm disagreement with the holding of the majority as expressed in Syllabus No. 2 of its opinion.
Where in the instant case is there a second punishment for the same offense? There is none. The petitioner was originally sentenced to confinement for a term of from one to ten years. Although, by reason of our "good time" statute and parole laws, one seldom serves the maximum sentence, he certainly is subject to the maximum sentence provided for the offense of which he was convicted. When one is released on parole and violates the terms thereof, our statute provides that he may be required "to serve in prison the remainder or any portion of his maximum sentence for which, at the time of his release, he was subject to imprisonment . . .". W.Va.Code, 1931, 62-12-19, as amended. This does not constitute a multiple punishment for the same offense but is a continuation of the original indeterminate sentence. It cannot, therefore, be a violation of the Double Jeopardy Clause of Article III, Section 5 of the West Virginia Constitution.
The language of the foregoing statute is clear and unambiguous and is not subject to interpretation. The clear mandatethat time out of custody on parole, should parole be revoked, shall not be creditedshall be applied unless constitutionally inhibited. Strangely, the majority expressly declines to hold W.Va.Code, 1931, 62-12-19, as amended, unconstitutional. Yet it holds that "in the future it is constitutionally mandated that credit be given." n. 18 maj. opn. If the statute is not held to be unconstitutional in the instant case, its clear provisions apply, the petitioner is not entitled to credit for the time on parole and the writ of habeas corpus should be denied.
Significantly, the majority fails to cite any case, in any jurisdiction, which holds that one is entitled to credit for time (out of custody) on parole; nor does my research reveal such case. The only case cited for that proposition by the petitioner, Howie v. Byrd, 396 F.Supp. 117 (D.C.W.D.N.C.1975) was reversed in 532 F.2d 750 (4th Cir. 1976). North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), cited in the majority opinion lends no support to the decision. In that case the defendant received a new trial and was awarded a greater sentence; the trial court did not give him credit for time served on the first sentence. Of course, he is entitled to such credit as mandated by the Supreme Court. Also, Ex parte Lange, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872, cited by the majority for the proposition that "no man can be twice lawfully punished for the same offense", lends no support to Syllabus No. 2. Certainly the above quote is universally accepted law, with which I am in full agreement.
In Hall v. Bostic, 529 F.2d 990 (4th Cir. 1975, cert. denied 1976), the same court that reversed the Howie case, the following language is found:
There is nothing unusual in the denial by North Carolina law of credit for probation or parole time against a prison sentence. It is common to both state and federal probation and parole systems. [Footnote omitted] The validity of such denial has been universally recognized both in federal and state decisions.
Although the majority opinion cites three cases as being critical of the failure to allow credit for time served on parole it is interesting that those cases did not take that step. Further, it is also interesting that as pointed out in the majority opinion, "A number of states have solved the problem by enacting statutes which specifically require credit for time served on parole upon its revocation." I fully agree that such provision may be effected by statute. However, when a statute such as ours, W.Va.Code, 1931, 62-12-19, as amended, specifically precludes the allowance of such credit, and it is not declared to be unconstitutional, I fail to see how it can be ignored.
*536 The apparent basis for the majority view is reflected by citation of law review and other articles which purport to demonstrate that one on parole is under restrictions and is therefore not free; therefore, asserts the majority, the parolee is still serving his sentence while on parole. The rationale that "time spent serving a sentence does not depend on the manner or location in which it is served", simply stated is not realistic. Ask one who is serving in a penitentiary, in a tiny barred cell, if he would just as well be there as at home with his family, even though in the latter situation he is under certain restrictions which require him to obey the law.
As stated in Hall v. Bostic, supra:
"A person does not serve a prison sentence while on probation or parole any more than he does while free on bail. In both instances, there are certain restrictions generally on the person's movements but the person's condition, as the Court observed in Morrissey v. Brewer, (1972) 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 is `very different from that of confinement in a prison.'"
Parole is a reformatory measure. It is designed to fulfill the humane goal of rehabilitating the prisoner by offering him conditional freedom as an alternative to confinement in prison. Should he fail to comply with the conditions of such freedom, then he is subject to the sentence originally imposednot an additional sentence for the same offense. Were this not so the incentive for granting parole would be nullified. See Zerbst v. Kidwell,, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938); Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923); and, United States ex rel. Demarois v. Farrell, 87 F.2d 957 (8th Cir. 1939).
Being of the firm opinion, which I believe is unanimously supported by judicial decision in the United States, that the refusal to allow credit on the principal sentence for time spent on parole does not impose multiple punishments for the same offense, I would deny the writ of habeas corpus.
NOTES
[1] W.Va.Code, 62-12-19:

". . . the board may revoke his parole and may require him to serve in prison the remainder or any portion of his maximum sentence for which, at the time of his release, he was subject to imprisonment: . . ."
[2] N.Y.Laws of 1877, ch. 173, § 5.
[3] An excellent summary of the judicial treatment of the parole system is found in Comment, The Parole System, 120 U.Pa.L.Rev. 282 (1971).
[4] An intermediate area of challenge has centered on the construction of particular parole statutory language with a view to having the language construed to require credit for time spent on parole. In these cases, no constitutional issue was raised and the courts held that the statute did not require credit for time spent on parole. Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247 (1923); Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1938); Watts v. Skeen, 132 W.Va. 737, 54 S.E.2d 563 (1949); Burgess v. Cunningham, 205 Va. 623, 139 S.E.2d 110 (1964).
[5] See, e. g., Crooks v. Sanders, 123 S.C. 28, 115 S.E. 760 (1922); Scott v. Chichester, 107 Va. 933, 60 S.E. 95 (1908); Woodward v. Murdock, 124 Ind. 439, 24 N.E. 1047 (1890).
[6] See, e. g., United States ex rel. McGill v. Schubin, 475 F.2d 1257 (2nd Cir. 1973); Hutchison v. United States, 450 F.2d 930 (10th Cir. 1971); Sturgis v. United States, 419 F.2d 390 (5th Cir. 1969); Moore v. Smith, 412 F.2d 720 (7th Cir. 1969); Hamrick v. Peyton, 349 F.2d 370 (4th Cir. 1965); Hedrick v. Steele, 187 F.2d 261 (8th Cir. 1951); Dolan v. Swope, 138 F.2d 301 (7th Cir. 1943); State v. Davis, 19 N.C.App. 459, 199 S.E.2d 37 (1973).
[7] Singer and Hand, Sentencing Computation: Laws and Practices, 10 Crim.L.Bull. 318 (1974); Note: Parole Revocation in the Federal System, 56 Geo.L.J. 705 (1968); Note, "A la Recherche du Temps Perdu": The Constitutionality of Denial of Credit on Revocation of Parole, 35 U.Chi.L.Rev. 762 (1968).
[8] See, e. g., Ala.Code tit. 42, § 12; Ill.Ann.Stat. ch. 38, § 1003-3-9(a)(3)(i) (Smith-Hurd); Mich.Stat.Ann. § 28.2308; N.H.Rev.Stat.Ann. § 651:3; Tenn.Code Ann. § 40-3619.
[9] "A parolee whose parole is revoked for violation of the conditions of parole shall be recommitted for the remainder of his maximum parole term, after credit thereon for the period served on parole prior to the violation and for reductions for good behavior earned while on parole."

For commentary, see Tentative Draft No. 5, § 305.22 (1956).
[10] "The period served on parole or conditional release shall be deemed service of the term of imprisonment, and subject to the provisions contained in Section 25 herein relating to a prisoner who is a fugitive from or has fled from justice, the total time served may not exceed the maximum term or sentence. . . ."
[11] "[T]ime spent under parole supervision until the date of violation for which parole is revoked should be credited against the sentence imposed by the court."
[12] It has been said that the concept of parole as a privilege or act of grace has its genesis in Cardozo's dictum in Escoe v. Zerbst, 295 U.S. 490, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), which involved a probation revocation. Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed.2d 1399 (1938), applies the concept of privilege to parole. Neither Escoe nor Zerbst considered the double jeopardy argument, but they furnished the "act of grace" and "privilege" rationale which led the court in Dolan v. Swope, 138 F.2d 301 (7th Cir. 1943), to reject the double jeopardy argument. Dolan is the leading case and others following it have not made any analysis of its underlying concepts.
[13] "1. When released, you must proceed directly to the place to which you have been paroled. You must promptly report your arrival to your parole officer, as instructed.

"2. You are required to have the written permission [emphasis in original] of your parole officer before you may:
a. Own or operate a motor vehicle
b. Marry
c. Change residence
d. Change employment
e. Leave the county to which you are paroled
"3. You are required to secure written permission from the Director of the Division of Correction before you may leave the State of West Virginia or the State to which you have been paroled.
"4. You must not use intoxicants to such an excess that your behavior becomes unacceptable.
"5. You are required to have suitable employment and to remain gainfully employed. Further, you must support your family and dependents and assume all of your moral and legal obligations.
"6. You must not visit or frequent places or areas forbidden by your parole officer.
"7. You must not own, carry, or possess firearms or lethal weapons of any kind.
"8. You must report to your parole officer each time you are arrested or questioned by officers of any law enforcement agency and furnish to your parole officer all the facts and circumstances which brought about your arrest or questioning.
"9. You shall on or before the first day of each month make a written report of your activities, on forms prescribed, to your parole officer.
"10. You are not to possess or use narcotics or narcotic drugs in any form, other than those narcotic drugs prescribed by a licensed physician.
"11. You will abide by any special written instructions imposed upon you by your parole officer, after such instructions have been approved by the Regional Parole Supervisor." [It was by a special instruction issued some nine months after petitioner was on parole that he was advised "you must not associate, visit or contact in any way Mary Nutter." This is the woman that petitioner married and the marriage was the main ground for the parole revocation.]
[14] von Hentig, Degrees of Parole Violation and Graded Remedial Measures, 33 J.Crim.L.C. & P.S., 363, 364 (1943).
[15] Arluke, A Summary of Parole RulesThirteen Years Later, 15 Crime and Delinquency, 267, 269 (1969).
[16] Statistics are from the Eighteenth through the Twenty-second Annual Reports of the West Virginia Board of Probation and Parole:

 Total
 Revocation Grounds of Revocation
 Hearings Technical Felony
1971 95 56 26
1972 107 55 19
1973 65 33 17
1974 80 47 18
1975 66 31 17
 __ __ __
Average 82 44 19

Rules and Regulations of the West Virginia Board of Probation and Parole effective August 1, 1971, define a "technical" violation as ". . . a paroled prisoner who has become delinquent through violating the rules and regulations and not on felony grounds."
[17] Louk noted that the conditions surrounding probation must be reasonable. It would appear that the same rule would apply to conditions surrounding parole.
[18] This holding does not require us to declare W.Va.Code, 62-12-19, unconstitutional, since the particular portion of this statute on credit (see note 1) is permissive. Our holding does require that in the future it is constitutionally mandated that credit be given. Further, our holding presupposes that the time served on parole is under the supervision of the Director of the Division of Correction under the Commissioner of Public Institutions and would not apply where the parolee has escaped the jurisdiction. In this event, the parolee would not be validly serving under the terms of his parole.