UNITED STATES of America ex rel.
Eugene McCLURE

v.

Ernest PATTON, et al.

Civ. A. No. 84–380.

United States District Court,
E.D. Pennsylvania.

June 26, 1985.

John W. Packel, Bradley Bridge, Defender Assn. of Philadelphia, Philadelphia, Penn., for petitioner.

Gregory R. Neuhauser, Deputy Atty. Gen., Philadelphia, Penn., for respondent.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Petitioner Eugene McClure has, through counsel, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. At the time this action was filed the petitioner was incarcerated in the State Correctional Institution at Camp Hill, Pennsylvania. The petitioner alleges that in 1981, while he was on parole in connection with a prison sentence imposed in 1977, the Pennsylvania Commonwealth Board of Probation and Parole ("the Board") declared him a "technical" parole violator for possessing a firearm in violation of the conditions of his parole, and recommitted him to serve twelve months "back time" on his original sentence. Subsequently, following his conviction in 1982 for weapons offenses which arose out of his possession of the same firearm, the Board declared him a "convicted" parole violator, and ordered that he serve an additional eighteen months on his original sentence. The petitioner contends that the Board's action in adjudging him a convicted parole violator, and ordering him to serve an additional eighteen months on his original sentence for the same conduct for which he was recommitted as a technical parole violator, violated his constitutional rights under the double jeopardy clause of the Fifth Amendment and the due process clause of the Fourteenth Amendment. United States Magistrate Peter B. Scuderi has issued a report with a recommendation that the peti-

tion for a writ of habeas corpus be denied. The petitioner filed timely objections to the report and recommendation, and this Court has undertaken a *de novo* review of the matter. For the reasons that follow, the Court has determined that the petition for a writ of habeas corpus will be denied.

*Facts*

The facts in this case are not disputed, and indeed the matter is before the Court on cross-motions for judgment on the pleadings. On September 12, 1977, following his conviction for robbery in the Court of Common Pleas, petitioner was sentenced to a term of not less than three nor more than seven years for robbery. On June 9, 1980, petitioner was paroled by the Board from this sentence. Condition No. 9 of his approved parole plan was his agreement not to own or possess any firearm, deadly weapon, or offensive weapon. Condition No. 9 is a standard condition of parole. 37 Pa.Code § 63.4(5)(ii).

On April 20, 1981, petitioner was arrested on charges of violating the Uniform Firearms Act, carrying a firearm without a license, carrying a firearm on a public street, and possession of an instrument of a crime. On June 25, 1981, petitioner was given a preliminary hearing by the Board on the charge of violating Condition No. 9 of his parole. A violation of parole hearing was held on August 25, 1981. In a decision dated September 18, 1981, the Board found that the petitioner was in violation of Condition No. 9 of his parole, and recommitted him to serve twelve months on his original sentence as a technical parole violator. Although under 61 Pa.Stat.Ann. § 331.21a(b) the Board had the power to recommit petitioner for the entire unexpired term of his sentence (approximately 46 months), *see United States ex rel. Lawson v. Cavell,* 425 F.2d 1350, 1352 (3d Cir.1970), in this case the twelve month period of recommitment was within the six-to-twelve month "presumptive range" for recommitment on a violation of the "no firearms" condition of parole. *See* 37 Pa.Code § 75.4. Furthermore, petitioner's recommitment as a technical parole violator did not result in the loss of "street-time" credit (towards completion of his original sentence) with respect to the time he had spent on parole prior to his arrest on the weapons offenses. 61 Pa.Stat.Ann. § 331.21a(b).

On January 7, 1982 petitioner was found guilty in the Court of Common Pleas of Philadelphia County on the weapons charges relating to his possession of the same firearm (at the same time) which formed the basis for the Board's prior recommitment action. Following that conviction, a second revocation of parole hearing was held. On May 25, 1982, the Board entered an order in which it "reaffirm[ed]" its recommitment order of September 18, 1981, and recommitted petitioner, as a *convicted* parole violator, to serve eighteen months (in addition to the twelve months already ordered) on the basis of the conviction on the firearms offenses. Pursuant to 61 Pa.Stat.Ann. § 331.21a(a), the petitioner, as a convicted parole violator, was deprived of his "street time" credit towards his original sentence.

At the second revocation of parole hearing, petitioner argued unsuccessfully that the imposition of additional recommitment time for the conviction would violate petitioner's double jeopardy and due process rights. Petitioner appealed the Board's decision to the Pennsylvania Commonwealth Court, which rejected his double jeopardy and due process arguments in a published decision. *McClure v. Commonwealth of Pennsylvania, Board of Probation and Parole,* 75 Pa.Cmwlth. 176, 461 A.2d 645 (1983). The Pennsylvania Supreme Court denied allocatur. Thus the petitioner has exhausted his available state remedies. 28 U.S.C. § 2254(b).

*Mootness*

Before proceeding to the merits of petitioner's claims the Court has, *sua sponte,* considered whether this action has become moot due to petitioner's reparole from prison. At the time the action was filed the petitioner was in custody, but during the pendency of the case (before briefing on the objection to the Magistrate's report was completed) the petitioner was repa-

roled. His maximum sentence expires on July 18, 1985.

It is clear that the "in custody" requirement of 28 U.S.C. § 2241 extends to a habeas petitioner who, although not incarcerated, is under the "custody" of a parole board, because the conditions of parole involve "significant restraints" upon liberty. *Jones v. Cunningham,* 371 U.S. 236, 242, 83 S.Ct. 373, 376–77, 9 L.Ed.2d 285 (1963). The Supreme Court has also held that final unconditional release from custody does not moot federal habeas review of the underlying conviction (where the habeas petition was filed while the petitioner was in custody) because of the substantial "disabilities or burdens [which] may flow from" petitioner's conviction. *Carafas v. LaVallee,* 391 U.S. 234, 237–38, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968), quoting *Fiswick v. United States,* 329 U.S. 211, 222, 67 S.Ct. 2245, 230, 91 L.Ed. 196 (1946). Finally, the Pennsylvania Supreme Court recently has held that the subsequent *reparole* of a petitioner seeking review of the Board's revocation of his parole does not moot his petition for review, at least until his original maximum sentence expires, because "surely, the determination that petitioner was a parole violator may have future consequences for him" for the duration of his parole period. *Johnson v. Commonwealth of Pennsylvania, Board of Probation and Parole,* 505 Pa. 569, 571, 482 A.2d 235, 236 (1984).

In the present case the petitioner is presently on parole, and he challenges the Board's decision which recommitted him as a convicted parole violator in 1982. The Court will assume that the Board's recommitment of the petitioner as a convicted parole violator in 1982 may have "future consequences" for him, at least until the expiration of his original sentence, and therefore has determined that the petition for a writ of habeas corpus is not moot.

## Double Jeopardy

The double jeopardy clause of the Fifth Amendment (made applicable to the states through the Fourteenth Amendment, *Ben-*

*ton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) ) provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." As the Supreme Court has often stated:

> [t]he Double Jeopardy Clause, of course, affords a defendant three basic protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977), quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2976, 23 L.Ed.2d 656 (1969).

*Ohio v. Johnson,* 467 U.S. 493, ——, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984).

It is well-established that the revocation of parole or probation (for a violation of the conditions of parole or probation), and the resulting commitment (or recommitment) of a defendant to serve time on the unexpired original sentence, is essentially an administrative rather than a criminal proceeding. *See Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (parole). In *Morrissey* the Supreme Court, in examining the extent of due process rights afforded parolees in a parole revocation proceeding, stated:

> We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Cf. *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Parole arises after the end of the criminal prosecution, including imposition of sentence. Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive. Revocation deprives an individual, not of the absolute liberty to which every citizen is

entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

*Morrissey*, 408 U.S. at 480, 92 S.Ct. at 2600. As a general matter, therefore,

parole and probation revocation proceedings are not designed to punish a criminal defendant for violation of a criminal law. The purpose of parole and probation revocation proceedings is to determine whether the parolee or probationer has violated the conditions of his parole or probation.

*United States v. Whitney*, 649 F.2d 296, 298 (5th Cir.1981). The only "punishment" imposed on a defendant who has been paroled from prison is that imposed by his original sentence, upon his original conviction. The Board of Probation and Parole does not increase or decrease that punishment; it merely determines when circumstances are appropriate for convicted persons to serve their sentences without continued physical custody. 61 Pa.Stat.Ann. § 331.17. Parole does not withdraw the original sentence, but changes the locale and conditions under which that sentence will be served. It is well-settled that the revocation of parole and recommitment to prison does not constitute a second sentence or punishment in violation of the double jeopardy clause. *United States ex rel. Lawson v. Cavell*, 425 F.2d 1350, 1352 (3d Cir.1970).

The petitioner does not dispute that the state could seek to revoke his parole based on his possession of the firearm in question. He does contend, however, that once the Board put him "in jeopardy" of being recommitted for a parole violation based on his possession of the firearm, he could not again be placed "in jeopardy" (of being recommitted to serve *additional* time on his original sentence) based on the same act of possessing the same firearm. Thus the issue in this case with respect to petitioner's double jeopardy argument is whether, by reason of the Board's two parole revocation proceedings, the petitioner was "twice put in jeopardy" within the meaning of the Fifth Amendment.

In *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), the Supreme Court held that a defendant who had been adjudged to have violated a criminal statute in a juvenile court proceeding could not subsequently be prosecuted as an adult (after being found unfit for treatment as a juvenile) for the same crime, because the jeopardy or risk associated with a criminal prosecution attached to the juvenile court proceeding. In analyzing whether the defendant in *Breed* had, by reason of the juvenile court adjudication, been "put in jeopardy" for the same offense involved in the subsequent criminal prosecution, the court stated:

Jeopardy denotes risk. In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution ... we have held that the risk to which [Double Jeopardy] Clause refers is not present in proceedings that are not "essentially criminal." *Helvering v. Mitchell*, 303 U.S. 391, 398, 58 S.Ct. 630, 632 [82 L.Ed. 917] (1938).

*Breed*, 421 U.S. at 528, 95 S.Ct. at 1785 (citations omitted). In *Helvering v. Mitchell*, cited by the Supreme Court in the *Breed* case, the court determined that a fifty percent civil penalty assessed by the Internal Revenue Service for deficiencies "due to fraud with intent to evade tax" was not an "essentially criminal" sanction which would bar, on double jeopardy grounds, a subsequent tax fraud criminal prosecution. 303 U.S. at 398–99, 58 S.Ct. at 633. The *Helvering* court observed that "one [type of sanction] which is characteristically free of the punitive criminal element is the revocation of a privilege voluntarily granted." 303 U.S. at 399, 58 S.Ct. at 633 & n. 2 ("typical of this class of sanctions" is the deportation of aliens and disbarment proceedings).

The *Breed* court emphasized that "the risk to which the term jeopardy refers is that traditionally associated with 'actions intended to authorize criminal punishment to vindicate public justice.'" *Breed*, 421 U.S. at 529, 95 S.Ct. at 1786, quoting *United States ex rel. Marcus v. Hess*, 317 U.S.

537, 548–49, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943). The *Breed* court found "no persuasive distinction ... between [a juvenile adjudication of delinquency] and a criminal prosecution, each of which is designed to vindicate [the] very vital interest in enforcement of criminal laws." 421 U.S. at 531, 95 S.Ct. at 1786, quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

In *United States v. Whitney*, 649 F.2d 296 (5th Cir.1981), a defendant simultaneously on parole and probation in connection with her conviction on federal criminal charges claimed that the double jeopardy clause prohibited the government from alleging the same acts of misconduct in a *probation* revocation hearing which had formed the basis for a prior revocation of her *parole*. The Fifth Circuit, as noted above, observed that parole and probation revocation proceedings are not designed to punish a defendant for violation of a criminal law, but to determine whether the conditions of parole or probation have been violated. 649 F.2d at 298. While acknowledging that, as a practical matter, parole and probation revocation proceedings may result in imprisonment, the *Whitney* court stated that, unlike the defendant in the juvenile court proceeding in *Breed*, a parolee or probationer "has already been convicted and sentenced" on the underlying criminal offense. *Whitney*, 649 F.2d at 298. The *Whitney* court "decline[d] to extend the double jeopardy clause to parole and probation revocation proceedings." *Id.*

■ In this case the Court has determined that the petitioner's parole revocation proceedings did not place the petitioner "at jeopardy" within the meaning of the Fifth Amendment. The revocation of parole "is not part of a criminal prosecution," *Morrissey v. Brewer*, 408 U.S. at 480, 92 S.Ct. at 2600, and, as "the revocation of a privilege voluntarily granted," it is not an "essentially criminal" proceeding subject to the protection of the double jeopardy clause. *Helvering v. Mitchell*, 303 U.S. at 398–99, 58 S.Ct. at 633. As the Magistrate correctly points out, parole revocation pro-

ceedings do not adjudicate guilt nor impose punishment; rather, such proceedings are factual reviews to determine whether a defendant has violated any of the conditions of his release. Magistrate's Report at 8. Since parole revocation proceedings are not "actions intended to authorize criminal punishment to vindicate public justice," *Breed*, 421 U.S. at 529, 95 S.Ct. at 1786, the risks contemplated by the double jeopardy clause are not present.

## Due Process

■ The petitioner also contends that even if the full protections of the double jeopardy clause do not extend to parole revocation proceedings, nevertheless the substantive quarantees of due process embodied in the Fourteenth Amendment must protect a parolee against "the unseemly procedure of revoking parole twice [for the same act]." The petitioner does not contend that the two parole revocation proceedings he received were procedurally defective or that he failed to receive the procedural safeguards to which he was entitled under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 593, 33 L.Ed.2d 484 (1972). Rather, his due process claim, while not clearly articulated, is that there is something fundamentally unfair about the state commencing two revocation proceedings and "imposing" two periods of recommitment for two violations of parole stemming from the single act of possessing a firearm. The petitioner contends that where a "single act" (e.g., the possession of firearms or drugs) constitutes *both* a violation of a condition of parole and a violation of a state criminal statute, the state may proceed against the parolee either as a "technical" violator or a "convicted" violator, but not both.

This contention must be rejected. First, it ignores the difference between the two proceedings. The "act" of possessing a firearm (or drugs, etc.) is at issue only in the proceeding to determine if parole should be revoked for violating the specific condition of parole, i.e., the "technical" violation. In contrast, at issue in a proceeding

to determine if parole should be revoked because of a criminal conviction is the fact of the *conviction*, not the underlying conduct. Petitioner concedes, as he must, that the state is justified in treating an act of misconduct (which would constitute a technical violation of parole) more severely if such misconduct results in a criminal prosecution and conviction. Indeed, the difference is significant because, as noted above, a convicted parole violator, in contrast to a technical parole violator, must forfeit the credit towards his sentence (his "street time") which he accrued while on parole.

There is nothing fundamentally unfair in imposing a period of recommitment for an act of misconduct which violates a condition of parole, and subsequently imposing an additional period of recommitment if it turns out that the misconduct was severe enough to warrant a criminal prosecution and conviction. Doubtless there are many instances where an act constituting a technical violation of parole (e.g., possession of marijuana, or engaging in "assaultive behavior") will not be deemed severe enough to warrant a criminal prosecution. However, in cases where the misconduct does result in a criminal prosecution, there is no reason why the state should be prevented from promptly commencing a revocation hearing to *immediately* adjust the parolee's status (as a result of the technical violation) and, in the event of a subsequent conviction, commencing a second revocation hearing pursuant to the legislature's determination that "convicted" violators should be treated more severely than "technical" violators.

If petitioner's argument is accepted, each time the state "chose" to await disposition of the criminal charges in order to proceed against the parolee as a *convicted* parole violator, it would abrogate its duty to promptly adjust the parolee's status based on the *technical* violations, and it would assume the risk of incurring a long, purposeless delay in the event the criminal charges ultimately did not result in conviction. On the other hand, if the state "chose" to *immediately* adjust the parolee's status on the basis of the technical violation, it would, as the Magistrate observed, "forfeit its statutorily prescribed right to treat convicted parole violators as more serious threats." Magistrate's Report at 11.

■ Finally, it appears that in connection with his due process claim the petitioner contends that the Board abused its discretion by imposing a total recommitment time of thirty months, for the two parole violations, when the Board's "presumptive range" for a violation of parole based upon a conviction for a Uniform Firearms Act violation establishes a "maximum" of twenty-four months. 37 Pa.Code § 75.2. This contention is without merit. It is true that, although the Board has the power to recommit a parole violator for the entire unserved balance of his sentence, 61 Pa.Stat. Ann. § 331.21a(a), if it determines to impose a period of recommitment in excess of its own "presumptive range" it must state its reasons for doing so in writing. 37 Pa.Code § 75.3(c); *see Fahlfeder v. Board of Probation and Parole*, 80 Pa.Cmwlth. 86, 470 A.2d 1130 (1984). However, since this Court has determined that the Board was entitled to proceed separately on the "technical" and "conviction" violations, it follows that the Board was entitled to impose a period of recommitment for each violation. The period of recommitment imposed for the technical violation (twelve months) was within the presumptive range established for such a violation, 37 Pa.Code § 75.2, and the eighteen month period of recommitment for the conviction on the Uniform Firearms Act offense was within the range established for such a conviction. The Board did not abuse its discretion in imposing these two periods of recommitment for the "technical" and "conviction" violations. *See Lewis v. Commonwealth Board of Probation and Parole*, 74 Pa. Cmwlth. 335, 459 A.2d 1339 (1983).

For all of the reasons set forth above, the Court has determined that Eugene McClure's petition for a writ of habeas corpus will be denied.