UNITED STATES of America ex rel. Samuel RICHARDS

v.

A. T. RUNDLE, Superintendent.

Misc. No. 3306.

United States District Court
E. D. Pennsylvania.
May 10, 1968.

**408**

Samuel Richards in personam.

Welsh S. White, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION AND ORDER

BODY, District Judge.

Relator was indicted by the Philadelphia Grand Jury as of November Term, 1960, Bills of Indictment Nos. 1403, charging felonious possession of drugs, and 1404 charging assault and battery and resisting arrest. On September 6, 1961, the Honorable Bernard J. Kelley, sitting without a jury in the Court of Quarter Sessions, Philadelphia, Pennsylvania, found relator guilty on both bills and deferred sentence. These convictions were secured after the court had denied relator's motion to suppress certain evidence as having been allegedly obtained in violation of relator's Federal Constitutional rights.

On November 27, 1961 Judge Kelley entered an Order granting relator's Motion in Arrest of Judgment solely on the ground that the evidence admitted at his trial had been unconstitutionally seized. The Commonwealth appealed from this Order and the Superior Court of Pennsylvania reversed Judge Kelley's decision and affirmed relator's conviction. Commonwealth v. Richards, 198 Pa.Super. 39, 182 A.2d 291 (1962). Relator's Petition for Allocatur was denied by the Pennsylvania Supreme Court, Nos. 80 and 81 October Term, 1962, No. 107 Allocatur Docket No. 4, and certiorari was denied to the United States Supreme Court. Richards v. Pennsylvania, 373 U.S. 376, 83 S.Ct. 1313, 10 L.Ed.2d 420 (1962).

On June 7, 1963 relator was sentenced by the Court of Quarter Sessions, Philadelphia, Pennsylvania, on Bill No. 1403, to serve a term of two to five years at the State Correctional Institution in Philadelphia.[1]

Relator subsequently filed with this Court a Petition for a Writ of Habeas Corpus (M-2397), which petition was denied without prejudice on March 10, 1965 for his failure to exhaust state remedies. Relator thereupon returned to the state courts and collaterally attacked his conviction and sentence by way of a Petition for a Writ of Habeas Corpus which he filed in the Philadelphia Court of Common Pleas as No. 5950 March Term, 1965. The petition was dismissed by the Honorable Charles L. Guerin on June 7, 1965. The Pennsylvania Superior Court affirmed per curiam the appealed Order. Commonwealth ex rel. Richards v. Rundle, 207 Pa.Super. 738, 216 A.2d 100 (1965). Relator's Petition for Allocatur was denied by the Supreme Court of Pennsylvania as of No. 313-A, Misc. Docket No. 14, by Order entered March 11, 1966.

---

1. Since the date of his federal habeas corpus hearing, relator was granted parole on the sentence he is presently complaining of. It is clear, however, that such parole still constitutes "custody" within the

meaning of 28 U.S.C. § 2241 and § 2254 so as to give this Court continuing jurisdiction over relator's habeas corpus petition. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

Having thus exhausted all of his available state remedies, the relator filed his present Petition for a Writ of Habeas Corpus. In that petition, relator alleges that his conviction on Bill of Indictment No. 1403 for felonious possession of drugs is unconstitutional and his detention unlawful because certain illegally seized evidence was introduced against him at trial. He claims first that his arrest was without probable cause and therefore the search incidental thereto was illegal; he contends secondly that even assuming his arrest was lawful, the subsequent search was not incident to that arrest.

Relator testified at his federal habeas corpus hearing regarding the facts surrounding his arrest and conviction. The Commonwealth offered no testimony and relied upon the complete state court record which was introduced and received into evidence as Commonwealth's Exhibit No. 1. It is the Commonwealth's position that the case sub judice presents this Court with a legal question only, and one involving the application of Federal Constitutional standards of search and seizure to the facts as already determined by the state courts. We agree with the Commonwealth's characterization of the issues before us.

The relevant facts giving rise to the legal questions at issue, which are found in the state court record and which differ only slightly from the version relator gave at his federal hearing, are set forth below.

On November 2, 1961, at approximately 4:45 P.M., three Philadelphia police officers, assigned to the Special Investigation Squad on narcotics, met a police informer at Fortieth Street and Girard Avenue. This particular informer had been giving the authorities information concerning sellers of narcotics for two years and his tips had proven reliable in the past, resulting in about ten arrests. The informer told the police officers that relator was at that moment illegally in possession of narcotics in his second-floor apartment located at 3905 Poplar Street, a distance of two blocks from this meeting place. In addition, the informer advised the officers that relator was planning to leave, thus necessitating immediate action on their part.

The officers, accompanied by the informer, promptly proceeded to 3905 Poplar Street at which time the informer pointed out the dwelling in which the relator's apartment was located. The officers did not obtain a search warrant for relator's apartment. While one of the officers remained outside, the other two rang the doorbell and were admitted into the common hallway by the first floor tenant. The same two policemen advanced up the stairway leading to the second-floor apartment at the top of which was relator's private apartment. It is important to note that no door existed at the foot of these stairs; the stairway to the second floor began at the end of the common hallway to which the officers were admitted entrance.

Upon reaching the top of the stairs, the officers were met by relator, who had stepped outside of his apartment and who, without warning, shoved one of the officers against the wall. At this point the officer identified himself and informed relator that he was under arrest. Relator then shouted, "They're here", and the arresting officer immediately heard someone running inside the apartment. It was later determined that this person was one of two men in relator's apartment at the time, and was leaving the kitchen in haste. Since the kitchen door was locked, the arresting officer forced it open just in time to see a man diving, head first, through the kitchen window with a brown paper bag in his hand.

The man and the bag were retrieved, and the bag was found to contain 32.7 grams of ground marihuana. The officers immediately conducted a search

of relator's kitchen and found two brown envelopes in his kitchen cabinet, one of which contained 5.9 grams and the other 5.7 grams of ground marihuana. Relator was subsequently charged with felonious possession of drugs and with assault and battery and resisting arrest.

Both at his trial and at his federal habeas corpus hearing, relator denied having shoved the arresting officer at the top of the stairs. In his present petition, however, he attacks only his conviction on Bill of Indictment No. 1403 for felonious possession of drugs. Futhermore, the trial judge clearly disbelieved relator's version of the incident on the staircase. This is evident from his Opinion in which he granted relator's Motion in Arrest of Judgment wherein he stated that the police officers, in his view, had no legal right to enter the building at 3905 Poplar Street and that, therefore, both convictions must be set aside. In fact, Judge Kelley assumed that relator pushed the officer since he stated in his Opinion that relator had the right to resist an unlawful arrest and an unconstitutional search and seizure, provided that only reasonable force was used. Based on a review of the entire record, we find that relator, in fact, pushed the arresting officer at the top of the stairs. We must next determine whether the officers legally entered the general premises downstairs as well as relator's private apartment upstairs.

■ The facts of this case establish that the police officers went without a warrant to the premises at 3905 Poplar Street in Philadelphia, in which relator's second floor apartment was located, to arrest him for possession of narcotics, a felony. It has long been recognized that a police officer has the right to arrest a person without a warrant provided he has probable cause to believe that the person to be arrested has committed a felony. Draper v. United

States, 358 U.S. 307, 310, 79 S.Ct. 329, 3 L.Ed.2d 327 (1958). The court in *Draper* defined probable cause as follows:

"Probable cause exists where 'the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. * * * *' " 358 U.S. at 313, 79 S.Ct. at 333.

In the instant case, it is clear that the officers had probable cause to believe that relator was committing a felony at the time they entered the premises in question to arrest him. The uncontradicted record shows that the police officers obtained their information concerning relator's conduct, just minutes before the arrest, from a reliable informer whose prior tips had led to the conviction of about ten other persons. This informer further told the police that relator was about to leave the premises.

We have reached the conclusion that the police officers here did not have the opportunity to apply for a warrant because of their reasonable belief that relator was planning to leave his apartment and possibly dispose of the narcotics he was possessed of. These officers would have been derelict in their duty in these circumstances if they had not proceeded immediately to 3095 Poplar Street to apprehend relator.

Furthermore, the officers were lawfully admitted to the common hallway of the building in which relator lived by the consent of the first floor tenant. While they were lawfully on the premises relator committed an assault upon one of the officers near the top of the common stairway. Immediately after relator assaulted the officer, the officer identified himself and relator shouted a warning in the direction of his apartment that "They're here". Within sec-

onds of relator's warning, the officers heard someone running in relator's apartment. The arresting officer brushed past relator and forced open the kitchen door in time to observe a man leaping head first through the kitchen window with a bag which was later found to contain marihuana. Finally, a contemporaneous search of relator's kitchen uncovered two smaller bags of marihuana.

The only real issues before the Court is whether the arresting officer legally entered relator's apartment when he admittedly forced open the kitchen door and whether the subsequent search of his kitchen was lawful. The Fourth Amendment prohibition against unreasonable search and seizure demands that, ordinarily, before a police officer enters upon private premises to conduct a search or to make an arrest, he must give notice of his identity and purpose; the only exception is when exigent circumstances justify the failure to give notice. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). Here the entry was clearly forceful; the officer forced open the kitchen door. However, such a forceful entry may be justified under the Ker decision where the persons within already know of the officers' authority and purpose or where those within, made aware of the presence of someone outside are then engaged in activity which justifies the officers in the belief that the destruction of the evidence is being attempted. 374 U.S. at 47, 83 S.Ct. 1623.

First of all, relator himself certainly knew the officers' identity at the very latest when he assaulted one of them, for the record indicates that the arresting officer identified himself upon being assaulted. Whether relator knew the officers' purpose at this point in time is a matter of speculation. It is possible to infer, however, that relator and his companions were aware of the officers' purpose from the fact that as soon as relator shouted the warning, "They're here", one man inside the apartment immediately ran toward the kitchen window and dove through it with a bag of marihuana clasped in his hand.

The second exception of Ker clearly applies in this case. The men inside relator's apartment were certainly aware of the presence of somone outside when relator called a warning to them. Furthermore, at least one of the two men inside was then engaged in activity which could have justified the officers' belief that the destruction of evidence was being attempted. Relator's warning to his companions, coupled with the sound of a person running through the apartment, was enough to justify this belief on the officers' part. The arresting officer's entry into relator's apartment was, therefore, lawful.

Finally, the search of relator's kitchen was sufficiently contemporaneous both in time and place to be an incident of the arrest. Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). The officers searched the kitchen within minutes after entering relator's apartment. During that search the officers found the two additional bags of marihuana in realtor's kitchen cabinet. This contraband was legally seized and legally introduced into evidence against relator at his trial.

For all of the foregoing reasons, we have concluded that the police officers did not violate any of relator's Federal Constitutional rights and his present Petition for a Writ of Habeas Corpus must, therefore, be denied.

It is the conclusion of this Court that relator is not entitled to a Certificate of Probable Cause for Appeal to the Third Circuit Court of Appeals as there is no merit whatsoever to relator's petition.