**UNITED STATES of America ex rel. Donald J. VAN PELT, Petitioner,**

v.

**WARDEN, Illinois State Penitentiary, Respondent.**

No. 75 C 2664.

United States District Court, N. D. Illinois, E. D.

Dec. 5, 1978.

John Moran, Chicago, Ill., for petitioner.

Melbourne Noel, Chicago, Ill., for respondent.

## DECISION

McMILLEN, District Judge.

Following the Court of Appeals' remand of the petition in the above case by an order entered February 18, 1977, the court has held hearings and conducted other proceedings to determine whether a mistrial was properly declared in the petitioner's first trial. (See Court of Appeals Order, p. 5.) Also since that time the United States Supreme Court has handed down a decision on double jeopardy in *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), and has vacated and remanded the decision in *United States v. Grasso*, 552 F.2d 46 (2d Cir. 1977). Based upon all of the law and available evidence, the court has decided that a mistrial was not properly declared in the petitioner's first trial and that he should be granted a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.*

The Supreme Court in *Arizona v. Washington* held at 434 U.S. 498, 98 S.Ct. 824 that a finding of double jeopardy must be based upon whether the entire trial court record reflects the kind of "necessity" which justifies depriving the defendant-petitioner of his right to have his trial completed by a particular tribunal. *Accord, United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). The Court likewise held that the decision of the trial judge to declare a mistrial is entitled to "great deference" and that that court need not make a full or explicit finding of "manifest necessity" for his action. The justification of a mistrial can be determined from the record as a whole, absent a finding by the trial court of the factors on which his

---

* As noted hereinafter, petitioner is now on parole and hence may not be under the jurisdiction of the Respondent. Nonetheless we would hope that the Respondent could accomplish the relief granted herein without the necessity of further proceedings.

exercise of discretion was based. In the case at bar, we have found it necessary to go beyond the record, pursuant to the Court of Appeals' mandate.

The petitioner's first trial, in which the mistrial was declared, was held in October 1971 in Moline, Illinois. Because of the remoteness of the trial both spacially and temporally from the court in which the petition for writ of *habeas corpus* is pending, it has not been possible to reconstruct all of the factors by which the trial judge's decision must be weighed, since memories are fallible and witnesses disappear. Nevertheless, we have in the record affidavits by the trial judge, by the defendant's trial attorney, and by the prosecutor. We also have taken the testimony of the petitioner, who was then still incarcerated, and of a witness whom he called. This, and additional evidence, will be referred to hereinafter, to the extent significant.

■ On the basis of all this evidence, some of which is conflicting, we find and conclude, firstly, that the petitioner has borne his burden of showing that he did not knowingly consent to the direction of a mistrial on or before October 27, 1971, although we find that his attorney did advise him that such a decision was forthcoming.

The record shows that the trial judge declared a mistrial not only without the specific consent or motion of the petitioner, but also without a full explanation to him of the circumstances or alternatives available. The attorney told the petitioner that the jury was "deadlocked," but he was not able to tell him how it stood and did not advise him that a mistrial would result in a retrial. No one except his attorney had any communication with petitioner on this subject, and the petitioner was not given an opportunity to object.

■ Therefore, the next question is whether the trial judge was under a "manifest necessity" to declare a mistrial without defendant's concurrence. After the jury had deliberated for about five and one-half hours, the judge's affidavit states that the bailiff told him that, according to the foreman, the jury was unable to agree on a verdict. This purported deadlock was not made a part of the trial court record, although petitioner's attorney admittedly was advised of it. Two jurors, James Driessen and Jack E. Couch, have filed statements herein dated July 19, and August 10, 1978, respectively, to the effect that the jury was still deliberating when the mistrial was declared and may have stood 11 to 1 for acquittal. Driessen states, "It would be my recollection that we could have reached a verdict if we had been allowed to continue to deliberate."

The foregoing indicates that the trial judge did not properly exercise his discretion if the basis for his decision was a deadlocked jury. He made no formal inquiry of the foreman, he did not ask the parties to agree or the defendant to move for a mistrial, he did not consider the alternative of allowing the jury to take a recess and resume deliberations the following day (at least by agreement), nor did he give the State equivalent of an *Allen* or even a *Silvern* instruction.

■ This leads us to the conclusion that the major factor causing the trial judge to declare a mistrial was the emergency which he believed had been encountered with respect to the illness of one juror's son. The judge had been advised of this situation about three hours before he declared a mistrial and had kept in touch with the hospital and with counsel to see whether the emergency might resolve itself. Just before declaring a mistrial, he was "very concerned about continuing to withhold information relative to the condition of her son" from the juror, although, as it turned out, the boy's father had been found and had signed a consent for an operation. Thus the trial judge, had he been fully informed, would have known that there was no longer any manifest necessity to release this juror. Even if he had not known this, he could have attempted to obtain a stipulation from the parties to allow this juror to go to the hospital in the custody of a bailiff to cope with the emergency, or to allow the jury to separate until the next day.

These were possible alternatives to his course of action which the judge did not explore, at least with the attorneys or on the record. The case of *United States v. Grasso*, supra, p. 619, although vacated and remanded for further consideration in the light of *Arizona v. Washington*, supra, p. 619, is still unscathed on this point, discussed at 552 F.2d 53. A trial judge cannot be expected to be omniscient or to find all of the facts accurately by his own *ex parte* investigation, but we find and conclude that as a matter of law he cannot deprive a defendant of his constitutional rights because of the emergency illness of a juror's son. Rather, assuming that the emergency still existed after three and one-half hours from the first notification, we believe that a defendant's rights are superior to those of an individual juror's if that juror is willing and able to continue deliberations.

▮ Even if the trial court reasonably believed that the son of one juror was in an emergency situation at a hospital, this does not create the kind of manifest necessity for discharging the jury referred to above and in *United States v. Perez*, 22 U.S. (9 Wheat) 579, 6 L.Ed. 165 (1824), for much the same reasons as outlined above. If the judge acts without a motion or stipulation from the defendant, he must act upon actual facts, not upon his reasonable belief, in our opinion. Furthermore, he must canvass the alternatives and, finally, make a record which shows the basis for his action so it can be reviewed. This was not done in this case.

All of this speculation on the balancing of constitutional rights against personal rights puts a heavy burden upon the trial judge and one which is easier to resolve by hindsight than under the exigent circumstances which existed. This is not the first time that a trial judge made an error which resulted in the release of an accused, particularly an error which is not clearly defined by legal precedents; but when a defendant's right to freedom must be weighed against an individual juror's right to come to the aid of her family, I believe the latter

right must give way to the former, except perhaps in extreme circumstances not presented here. This assumes, as we found, that the motivating reason for declaring a mistrial was the trial judge's desire to allow the juror to go to the aid of her stricken son. However, the same holds in the case of a deadlocked jury; the facts must justify the decision unless defendant consents. *See Arizona v. Washington*, supra, p. 619, 434 U.S. at n.28, 98 S.Ct. 824 and the case cited therein, *United States v. Gordy*, 526 F.2d 631 (5th Cir. 1976), and *United States ex rel. Webb v. Court of Common Pleas*, 516 F.2d 1034 (3d Cir. 1975).

The Supreme Court in *Arizona v. Washington* concluded at 434 U.S. 505, 98 S.Ct. 830 that "the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar." Here the petitioner has borne his burden, by making a *prima facie* showing of constitutional deprivation. *See Carmical v. Craven*, 547 F.2d 1380, 1382 (9th Cir. 1977). Our own Circuit seems to have followed this standard in *United States v. Medansky*, 486 F.2d 807, 811 (7th Cir. 1973), *cert. den.* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 886 (1974), at least before *Arizona v. Washington*. Certainly the petitioner need not prove his case beyond a reasonable doubt, and we find and conclude that he has established it by the weight of the evidence and pursuant to the applicable legal authorities.

This proceeding has been a lengthy one, extended in part by our anxiety to obtain all possible evidence. The petitioner has served upwards of seven years in the penitentiary by virtue of being convicted a second time on the same offense and has recently been released on parole. He has been ably represented throughout these proceedings by John Thomas Moran, of the Illinois Public Defender Association. The respondent has contested the matter vigorously through the office of the Attorney General of the State of Illinois. We have no doubt that the higher ends of justice will be served by releasing the petitioner from parole, and therefore his petition for a writ of *habeas corpus* is granted. *See Jones v.*

*Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

SO ORDERED.