(Slip Opinion) OCTOBER TERM, 2025 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## OLIVIER *v.* CITY OF BRANDON, MISSISSIPPI

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 24–993. Argued December 3, 2025—Decided March 20, 2026

Petitioner Gabriel Olivier is a street preacher in Mississippi who believes that sharing his religious views with fellow citizens is an important part of exercising his faith. His vocation sometimes took him to the sidewalks near an amphitheater in the City of Brandon, where he could find sizable audiences attending events. In 2019, the City adopted an ordinance requiring all individuals or groups engaging in "protests" or "demonstrations," at around the time events were scheduled, to stay within a "designated protest area." In 2021, Olivier was arrested for violating that ordinance. He pleaded no contest in municipal court. The court imposed a $304 fine, one year of probation, and 10 days of imprisonment to be served only if he violated the ordinance during his probation. Olivier did not appeal, paid the fine, and served no prison time. Because he still wanted to preach near the amphitheater, Olivier filed suit against the City in federal court under 42 U. S. C. §1983, alleging that the city ordinance violates the Free Speech Clause of the First Amendment by consigning him and other speakers to the amphitheater's protest area. The complaint seeks, as a remedy, a declaration that the ordinance infringes the First Amendment and an injunction preventing city officials from enforcing the ordinance in the future. In other words, the relief requested is only prospective; Olivier seeks neither the reversal of, nor compensation for, his prior conviction.

The parties contested in the lower courts whether this Court's decision in *Heck* v. *Humphrey*, 512 U. S. 477—which prohibits the use of §1983 to challenge the validity of a prior conviction or sentence so as to obtain release from custody or monetary damages—bars the suit from going forward. On the City's view of *Heck*, a person previously

convicted of violating a statute cannot challenge its constitutionality under §1983 because success in the suit would cast doubt on the prior conviction's correctness. On Olivier's contrary view, *Heck* does not apply when a plaintiff seeks wholly prospective relief, rather than relief relating to the prior conviction. The District Court agreed with the City's understanding of *Heck* and found Olivier's suit barred. The Court of Appeals for the Fifth Circuit affirmed on the same reasoning.

*Held*: Olivier's suit seeking purely prospective relief—an injunction stopping officials from enforcing an ordinance in the future—can proceed, notwithstanding Olivier's prior conviction for violating that ordinance; *Heck* does not hold otherwise. Pp. 5–13.

(a) Before the Court's decision in *Heck*, the City would have had no plausible basis for claiming Olivier's suit is barred. That type of suit falls within §1983's heartland: Assuming a credible threat of prosecution, a plaintiff may bring a §1983 action to challenge a local law as violating the Constitution and to prevent that law's future enforcement. See, *e.g.*, *Steffel* v. *Thompson*, 415 U. S. 452. In *Wooley* v. *Maynard*, 430 U. S. 705, the Court held that rule to apply even when the plaintiff was previously convicted under the challenged law. The Court explained that because the suit at issue sought "wholly prospective" relief—"only to be free from prosecutions for future violations"—and was "in no way designed to annul the results of a state trial," §1983 provided an avenue for the plaintiff's claim. *Id.,* at 711. Were it otherwise, the plaintiff would have been trapped "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity." *Id.*, at 710.

The Court's decision in *Wooley*, taken alone, would defeat the City's attempt to prevent Olivier's suit from going forward, but the City argues the Court's later decision in *Heck* requires the opposite result. In *Heck*, the Court held that a state prisoner could not use §1983 to seek damages attributable to his allegedly unconstitutional conviction. The Court reasoned that such a suit in truth mounts a "collateral attack" on the validity of the conviction, and thus intrudes on the habeas statute's domain. 512 U. S., at 485. And such a suit could lead to "parallel litigation" and "conflicting" judgments about the same conduct, with the §1983 suit suggesting that the plaintiff should be released even as criminal or habeas proceedings found the opposite. *Id.*, at 484. Hence the so-called *Heck* bar on "§1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.*, at 486. "[W]hen a state prisoner seeks damages in a §1983 suit," the Court went on, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.*, at 487.

The Court subsequently drew a line between *Heck*-type claims and

Syllabus

those seeking forward-looking relief. In *Edwards* v. *Balisok*, 520 U. S. 641, the Court held that while a state prisoner could not obtain damages for an alleged past violation, a claim for "prospective injunctive relief"—the use of fairer procedures in the future—may "properly be brought under §1983," because it does not depend on showing the "invalidity of a previous" sentencing decision. *Id.*, at 648. In *Wilkinson* v. *Dotson*, 544 U. S. 74, the Court allowed state prisoners to bring a §1983 suit requesting an injunction requiring the State to "comply with constitutional" parole requirements "in the future," determining that such a claim for "*future* relief" was "distant" from "the core of habeas" and so not barred by *Heck*. 544 U. S., at 77, 82. Pp. 5–9.

(b) As in *Balisok* and *Dotson*, Olivier's suit falls outside habeas's core—and likewise outside *Heck*'s concerns. Olivier is not challenging the "validity of [his] conviction or sentence," for the purpose of securing release or obtaining monetary damages. *Nance* v. *Ward*, 597 U. S. 159, 167–168. Instead, he seeks "wholly prospective" relief—"only to be free from prosecutions for future violations" of the ordinance. *Wooley*, 430 U. S., at 711. Because Olivier's suit does not, as habeas suits do, "collateral[ly] attack" the old conviction, it cannot give rise to "parallel litigation" respecting his prior conduct, and does not risk "conflicting" judgments over how that conduct was prosecuted or punished. *Heck,* 512 U. S., at 484, 485. Unlike in *Heck*, Olivier's suit merely attempts to prevent a future prosecution, so the *Heck* bar does not come into play. Pp. 9–10.

(c) The City's main argument to the contrary rests on one sentence in *Heck* that states: "[W]hen a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed." 512 U. S., at 487. Strictly speaking, the "necessarily imply" language fits: If Olivier succeeds in this suit, it would mean his prior conviction was unconstitutional. But "general language in judicial opinions should be read as referring in context to circumstances similar to [those] then before the Court," *Turkiye Halk Bankasi A.S.* v. *United States*, 598 U. S. 264, 278, and the circumstances here differ from those in *Heck*. The *Heck* language at issue was used to identify claims that were really assaults on a prior conviction, even though involving some indirection. By contrast, there is no looking back in Olivier's suit; both in the allegations made, and in the relief sought, the suit is entirely future oriented—even if success in it shows that something past should not have occurred. The *Heck* Court did not consider such a suit, and the *Heck* language was not meant to address it. *Heck*, properly understood, does not preclude suits that only attempt to prevent future prosecutions.

Syllabus

Olivier's suit to enjoin future prosecutions under the city ordinance, so he can return to the amphitheater, may proceed.  Pp. 10–13.

KAGAN, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES

No. 24–993

## GABRIEL OLIVIER, PETITIONER *v.* CITY OF BRANDON, MISSISSIPPI

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[March 20, 2026]

JUSTICE KAGAN delivered the opinion of the Court.

Petitioner Gabriel Olivier was once convicted of violating a city ordinance restricting expressive activity near a public amphitheater. He now wishes to return to that venue to voice his beliefs—but this time, without the threat of criminal punishment. He therefore filed this suit, alleging that the city ordinance infringes the First Amendment. The suit, brought under 42 U. S. C. §1983, seeks an order declaring the ordinance unconstitutional and preventing its enforcement in the future. The suit, in other words, requests only forward-looking relief—nothing to do with Olivier's prior conviction.

The question presented here is whether this Court's decision in *Heck* v. *Humphrey*, 512 U. S. 477 (1994), bars Olivier's suit. The answer is no. *Heck* prohibits the use of §1983 to challenge the validity of a prior conviction or sentence so as to obtain release from custody or monetary damages. That decision has no bearing on Olivier's suit seeking a purely prospective remedy.

## I

Olivier was convicted some five years ago for violating the local ordinance he now challenges. Olivier is a street preacher in Mississippi—a Christian who believes that sharing his religious views with fellow citizens is an important part of exercising his faith. His vocation sometimes took him to the sidewalks near an amphitheater in the City of Brandon, where he could find sizable audiences attending events. Olivier was apparently not the only speaker attracted to that area, and the activities there caused some disruption. In 2019, the City adopted an ordinance requiring all individuals or groups engaging in "protests" or "demonstrations," at around the time events were scheduled, to stay within a "designated protest area." Supp. to App. 70 (capitalization deleted). On his next trip to the amphitheater, in 2021, Olivier checked out that area, but found it too remote for communicating his message. So he returned, along with his signs and loudspeaker, to the sidewalk fronting the amphitheater. And there he was arrested by the Brandon police chief for violating the city ordinance. The next month, Olivier pleaded no contest in municipal court. The court imposed a $304 fine; one year of probation; and ten days of imprisonment, to be served only if, during his probation, he again violated the ordinance. Olivier did not appeal, paid the fine, and served no prison time.

Because he still wanted to preach near the amphitheater, Olivier's next step was to file this lawsuit in federal court, naming the City and its police chief as defendants. The suit is brought under §1983, which authorizes claims against state and local officials for the "deprivation of any rights" secured by the Constitution. Olivier's complaint alleges that the city ordinance violates the Free Speech Clause of the First Amendment by consigning him (and other speakers) to the amphitheater's out-of-the-way protest area. The complaint seeks, as a remedy, a declaration that the ordinance infringes his (and other speakers') First Amendment

rights and an injunction preventing city officials from enforcing the ordinance in the future.[1]  In other words, the relief requested is only prospective; Olivier seeks neither the reversal of, nor compensation for, his prior conviction. And Olivier has since made clear that he has no interest in using a favorable judgment in this suit to later get his record expunged or avoid his conviction's collateral effects. See Tr. of Oral Arg. 7.  The suit is just meant to ensure that Olivier may return to the amphitheater to speak without fear of further punishment.

The parties contested in the lower courts whether this Court's decision in *Heck* v. *Humphrey* bars the suit from going forward.  On the City's view of *Heck*, a person previously convicted of violating a statute cannot challenge its constitutionality under §1983 because success in the suit would cast doubt on the prior conviction's correctness.  On Olivier's contrary view, that rule is subject to two limitations, either of which enables his suit to proceed.  First, Olivier contended, *Heck* does not preclude a suit seeking wholly prospective relief, rather than relief relating to the prior conviction.  And second, Olivier argued, *Heck* does not apply (regardless of the relief sought) when the person suing was never in custody for his conviction, so never had a chance to challenge it in federal habeas proceedings.[2]

———————

[1] Originally, Olivier also sought damages for the City's prior enforcement of the ordinance against him.  But he abandoned that request as the suit progressed, leaving only the above-described pleas for declaratory and injunctive relief.

[2] The premise of Olivier's second argument is, of course, that he had not been in custody following his conviction.  That premise appears to be wrong.  Under his sentence, Olivier served a year of probation—indeed, was still serving that time when he filed this suit.  And a person on probation is generally "'in custody' for purposes of federal habeas corpus." *Minnesota* v. *Murphy*, 465 U. S. 420, 430 (1984); see *Jones* v. *Cunningham*, 371 U. S. 236, 241–243 (1963).  For whatever reason, though, the City failed to raise that objection below, and both lower courts accepted that Olivier was not put in custody for his conviction.  See 2022 WL

The District Court agreed with the City's understanding of *Heck*, and the Court of Appeals for the Fifth Circuit affirmed on the same reasoning. If Olivier's §1983 suit succeeded, the District Court reasoned, the judgment would "undermine his Municipal Court conviction." 2022 WL 15047414, *11 (SD Miss., Sept. 23, 2022). And so the suit was categorically barred under *Heck*. Similarly, the Fifth Circuit viewed *Heck* as precluding any §1983 claim that, if successful, would "necessarily imply the invalidity of the plaintiff's criminal conviction." 2023 WL 5500223, *1 (Aug. 25, 2023); see *Heck*, 512 U. S., at 487 (using near-identical language). Olivier's claim, the court maintained, was of that sort: If he showed that the city ordinance violated the First Amendment, he also would show that his prior conviction should not have happened. And that fact, the court concluded, was dispositive. It did not matter whether Olivier's conviction had landed him in custody. See 2023 WL 5500223, *4. Nor did it matter whether Olivier's suit sought only prospective relief. See *ibid.*

The Fifth Circuit denied rehearing en banc, but eight (of seventeen) judges dissented. Those judges understood *Heck* to bar only the "*retrospective* use of [§1983] to collaterally attack criminal convictions." 121 F. 4th 511, 514 (2024) (Oldham, J., dissenting) (emphasis in original). A suit like Olivier's for "prospective injunctive relief," the dissenters argued, is not precluded because granting a "forward-looking injunction" neither "invalidate[s]" nor "impose[s] tort liability" for a prior conviction. *Id.*, at 514–515; see *id.*, at 513 (Ho, J., dissenting) (similar). The dissenters noted that the Court of Appeals for the Ninth Circuit had adopted their view, which meant there was now a Circuit split about

_____

15047414, *10 (SD Miss., Sept. 23, 2022); 2023 WL 5500223, *4 (CA5, Aug. 25, 2023). Given that the case has proceeded so far on that basis, we treat any contrary argument as forfeited and proceed in the same way.

*Heck*'s proper reach. 121 F. 4th, at 515 (Oldham, J., dissenting) (citing *Martin* v. *Boise*, 920 F. 3d 584, 614 (2019)).

We granted certiorari, 606 U. S. 959 (2025), to consider the two independent reasons Olivier offered below for why his suit escapes the so-called *Heck* bar: that he was never in custody for his prior conviction, and that he now seeks purely prospective relief. See Pet. for Cert. i. We need not address the former reason today because we agree with Olivier (and the Fifth Circuit's dissenting judges) on the latter. Given that Olivier asked for only a forward-looking remedy—an injunction stopping officials from enforcing the city ordinance in the future—his suit can proceed, notwithstanding his prior conviction.[3] *Heck*, properly understood, does not say otherwise.

## II

Before our decision in *Heck*, the City would have had no plausible basis for claiming Olivier's suit is barred. That type of suit, as no one here disputes, falls within §1983's heartland: Assuming a credible threat of prosecution, a plaintiff may bring a §1983 action to challenge a local law as violating the Constitution and to prevent that law's future enforcement. See, *e.g.*, *Steffel* v. *Thompson*, 415 U. S. 452 (1974). And a half-century ago, in *Wooley* v. *Maynard*, 430 U. S. 705 (1977), this Court held that rule to apply even when the plaintiff (like Olivier) was previously convicted under the challenged law.

---

[3] In reaching that holding, we do not say that *every* person can challenge his statute of conviction through a §1983 suit for wholly prospective relief. The Government, appearing here as *amicus curiae*, urges us to reserve the issue whether a person may bring such a suit while he is in custody for violating the statute challenged. See Tr. of Oral Arg. 41–42, 46–47; see also Brief for United States 27 (positing why that circumstance might matter). We think it appropriate to do so because, as we have explained, our assumption here is that Olivier was never in custody. See *supra*, at 3–4, n. 2.

For anyone who has followed along this far, a description of *Wooley* should strike a chord. George Maynard viewed the "Live Free or Die" motto on his New Hampshire license plate as "repugnant to [his] moral and religious beliefs." *Id.*, at 707. So he covered those words with reflective tape, in violation of a state statute. Maynard was convicted for that conduct three times over in state court, receiving (mostly suspended) sentences involving small fines and short jail terms. After the last proceeding had concluded— and presumably anxious that there not be a fourth— Maynard brought a §1983 suit in federal court, seeking a declaration that the state statute violated the First Amendment and an injunction to prevent its future enforcement. New Hampshire argued, as its front line of defense, that the suit was precluded "because [Maynard] has already been subjected to prosecution" under the challenged law. *Id.*, at 712, n. 9. Our decision in *Heck* had not yet issued. Instead, New Hampshire relied on "*Younger* principles," which caution against federal interference with state-court proceedings. *Ibid.*; see *Younger* v. *Harris*, 401 U. S. 37 (1971). Those principles would be offended, New Hampshire claimed, if a federal court were to enjoin the enforcement of a state law at the behest of someone earlier convicted under it in state court.

This Court rejected New Hampshire's argument on the ground that Maynard's suit sought only to prevent "further prosecution" under the New Hampshire statute. *Wooley*, 430 U. S., at 711. The suit, the Court explained, was "in no way designed to annul the results of a state trial" (as indeed would have been troubling under *Younger* doctrine). 430 U. S., at 711. Maynard had "already sustained [his] convictions" and "served [his] sentence[s]." *Ibid.* And he did "not seek to have his record expunged, or to annul any collateral effects" his convictions might have—for example, "upon his driving privileges." *Ibid.* Rather, Maynard sought "wholly prospective" relief: He wanted "only to be free from

prosecutions for future violations of the same" (allegedly unconstitutional) statute. *Ibid.* Because that was so, the Court held, §1983 provided an avenue to bring his claim. See *id.*, at 710. Were it otherwise, the Court reasoned, Maynard would have no good way to vindicate his First Amendment rights: He would be trapped "between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity" so as to avoid yet another criminal prosecution. *Ibid.*

All of that could as easily be said of Olivier's suit. Like Maynard, Olivier was convicted under the statute he now alleges to violate the First Amendment. But also like Maynard, Olivier did not seek in his §1983 suit to upset that conviction, or even to avert its collateral effects. Rather, Olivier sought "wholly prospective" relief—an injunction to preclude "further prosecution" under the law he had earlier broken. *Id.*, at 711. If not able to bring such a suit, Olivier would face the same untenable choice as Maynard: violate the law and suffer the consequences (the Scylla), or else give up what he takes to be his First Amendment rights (the Charybdis). See *id.*, at 710. Our decision in *Wooley*, taken alone, would thus defeat the City's attempt to prevent Olivier's suit from going forward.

Some two decades later, though, the Court encountered *Heck* v. *Humphrey*, which the City now argues requires the opposite result. Roy Heck had been convicted in state court of manslaughter, and was serving a fifteen-year prison sentence. While his appeal was pending, he filed a §1983 suit in federal court naming two prosecutors and a police investigator as defendants. Heck alleged that they had committed misconduct, such as destroying exculpatory evidence, to gain his conviction. He sought as a remedy monetary "damages attributable to [his] unconstitutional conviction." 512 U. S., at 489–490. The question raised was whether §1983 allowed the suit.

The Court held it did not. The Court took as settled that Heck could not have used §1983 to "challenge[] the fact or duration of his confinement and seek[] immediate or speedier release" from custody. *Id.*, at 481 (citing *Preiser* v. *Rodriguez*, 411 U. S. 475, 488–490 (1973)). A claim of that sort, the Court noted, "must be brought in habeas corpus proceedings." *Heck*, 512 U. S., at 481. And so too, the Court held, Heck could not use §1983 to seek damages deriving from a conviction, unless it had already been overturned. See *id.*, at 486–487. To be sure, Heck could not get damages by way of a habeas action. See *id.*, at 481. But in suing for them under §1983, Heck was in truth mounting a "collateral attack" on the validity of his conviction, and thus intruding on the habeas statute's domain. *Id.*, at 485. Such a suit could lead to "parallel litigation" respecting "the issues of probable cause and guilt." *Id.*, at 484. And it could give rise to "conflicting" judgments about the same conduct, with the §1983 suit suggesting that Heck should be released even as criminal or habeas proceedings found the opposite. *Ibid.* Hence the *Heck* bar on "§1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id.*, at 486. "[W]hen a state prisoner seeks damages in a §1983 suit," the Court went on, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.*, at 487. A judgment for Heck would have done so, for his success rested on proof discrediting his conviction. His §1983 suit therefore could not go forward.

In two later decisions, though, the Court drew a line between *Heck*-type claims and those seeking forward-looking relief. In *Edwards* v. *Balisok*, 520 U. S. 641 (1997), a state prisoner alleged that procedures used in a disciplinary hearing—which had deprived him of good-time credits and thus lengthened his sentence—violated his Fourteenth Amendment due process rights. He sought money damages

for the alleged past violation; he also sought an injunction requiring prison officials to adopt new procedures, so as to "prevent future violations." *Id*., at 643. The Court made short work of the claim for damages. As in *Heck*, the Court reasoned, the prisoner could not obtain damages without demonstrating "the invalidity of the punishment imposed" on him (*i.e.*, the loss of his good-time credits), and thus impinging on habeas. 520 U. S., at 648. But the claim for "prospective injunctive relief"—the use of fairer procedures in the future—was a different thing. Said the Court: "Ordinarily, a prayer for such prospective relief" may "properly be brought under §1983," because it does not depend on showing the "invalidity of a previous" sentencing decision. *Ibid*. Likewise, in *Wilkinson* v. *Dotson*, 544 U. S. 74, 77 (2005), the Court allowed state prisoners to bring a §1983 suit alleging that existing parole procedures violated the Due Process Clause and requesting an injunction that the State "comply with constitutional" requirements "in the future." That claim for "*future* relief," the Court determined, was "distant" from "the core of habeas" and so not barred by *Heck*. 544 U. S., at 82 (emphasis in original).

The same is true of Olivier's suit. Olivier is not challenging the "validity of [his] conviction or sentence," for the purpose either of securing (or speeding) release or of obtaining monetary damages. *Nance* v. *Ward*, 597 U. S. 159, 167–168 (2022). Instead, Olivier is seeking (in *Wooley*'s words) "wholly prospective" relief—"only to be free from prosecutions for future violations" of the city ordinance. 430 U. S., at 711. And that request, as *Balisok* and *Dotson* recognized, falls outside habeas's core—and likewise outside *Heck*'s concerns. See 520 U. S., at 648; 544 U. S., at 82. Olivier's suit does not, as habeas suits do, "collateral[ly] attack" the old conviction. *Heck*, 512 U. S., at 485. It thus cannot give rise, as *Heck* feared, to "parallel litigation" respecting his prior conduct. *Id*., at 484. Nor does it risk "conflicting" judgments over how that conduct was prosecuted or

punished. *Ibid.* The suit, after all, is not about what Olivier did in the past, and depends on no proof addressed to his prior conviction. Unlike in *Heck*, the suit merely attempts to prevent a future prosecution. So the *Heck* bar does not come into play.

The City's main argument to the contrary (echoing the decisions below) rests on one sentence of our *Heck* opinion. That supposedly dispositive line states: "[W]hen a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed" (unless the conviction has already been invalidated). *Id.*, at 487; see *supra*, at 8. Of course, Olivier does not "seek[] damages" in his §1983 suit, but the City points out that several post-*Heck* decisions dropped the sentence's prefatory phrase while repeating the rest. See, *e.g.*, *Dotson*, 544 U. S., at 81–82; *Skinner* v. *Switzer*, 562 U. S. 521, 533–534 (2011). And in the City's view, that modified inquiry suggests that the *Heck* bar should apply to Olivier's suit. That is because, the City says, a judgment in Olivier's favor would "necessarily imply the invalidity of [his] prior conviction[]." Brief for Respondent 33. To declare the city ordinance unconstitutional, as Olivier seeks, would be to imply that no one—including Olivier—should have been convicted under that law.

The argument is a fair one, but hardly dispositive. We have to agree that if Olivier succeeds in this suit, it would mean his prior conviction was unconstitutional. So, strictly speaking, the *Heck* language fits. But that could just show that the phrasing was not quite as tailored as it should have been. This Court has often cautioned that "general language in judicial opinions should be read as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Turkiye*

*Halk Bankasi A.S.* v. *United States*, 598 U. S. 264, 278 (2023) (quoting *Illinois* v. *Lidster*, 540 U. S. 419, 424 (2004)). The City's argument raises the question whether that is true here.

We think, with the benefit of hindsight, that it is—that the sentence relied on swept a bit too broad. That language was used in *Heck* to identify claims that were really assaults on a prior conviction, even though involving some indirection. One example was found in *Heck* itself: a claim seeking not straightforward reversal of a conviction (and release from custody), but damages attributable to that conviction, requiring proof that police misconduct made it invalid. Another example *Heck* offered was yet further attenuated. See 512 U. S., at 486–487, n. 6. A person convicted of resisting arrest—defined as preventing an officer from effecting a lawful arrest—brings a §1983 action for damages against the arresting officer for violation of his Fourth Amendment right not to be unreasonably seized. The damages sought, unlike in *Heck*, are not attributable to his conviction (for *resisting* arrest); they are damages deriving only from the underlying arrest. Still, a "§1983 action will not lie" because the plaintiff, to prevail, "would have to negate an element of the offense of which he has been convicted"— *i.e.*, that the underlying arrest was "lawful." *Ibid.* Once again, the suit requires looking back to conduct involved in a prior conviction, and offering contradictory proof. By contrast, there is no looking back in Olivier's suit. Both in the allegations made, and in the relief sought, the suit is all future-oriented—even if, as a kind of byproduct, success in it shows that something past should not have occurred. The *Heck* Court did not consider such a suit, and the *Heck* language was not meant to address it.

Proof positive comes from the logical—but wholly untenable—consequences of the City's position. Suppose that after Olivier's conviction, another citizen brings a §1983 suit to enjoin the city ordinance so that he can speak outside the

amphitheater. Let's name this citizen Laurence and say that he boasts a clean police record. Would *Heck* allow Laurence's suit to proceed? See 121 F. 4th, at 514 (Oldham, J., dissenting) (offering a similar hypothetical). The very question seems ludicrous: No one would say *Heck* poses a bar. But under the City's logic, it should—because here, too, *Heck*'s language fits. The hypothetical suit—no less than Olivier's own—would, if successful, "necessarily imply the invalidity" of Olivier's conviction (as well as all other convictions under the statute). 512 U. S., at 487. A judgment in that suit too would demonstrate, and in just the same way, that Olivier's conviction was unconstitutional. The hypothetical thus shows that the "necessarily imply" language cannot extend as far as the City wants. Contra the City's logic, the *Heck* language does not preclude Laurence's §1983 suit because, rather than challenging a prior conviction, that suit only attempts to prevent future ones. And contra the City's actual position, the language does not preclude Olivier's §1983 suit for the identical reason—because, as explained above, it looks forward only. See *supra*, at 9–10.

With *Heck* thus out of the way, *Wooley* returns to center stage. Recall the Court held in that case that Maynard could sue under §1983 to prevent future enforcement of an allegedly unconstitutional statute, despite a prior conviction under that law. See *supra*, at 6–7. The same rule allows Olivier to sue under §1983 to enjoin future prosecutions under the city ordinance, despite his prior conviction. Were that not so, Olivier would face the same dilemma as Maynard: flout the law and risk another prosecution, or else forgo speech he believes is constitutionally protected. See *Wooley*, 430 U. S., at 710; *supra*, at 7. We declined to put Maynard to that choice, and we will not put Olivier to it either. His suit to enjoin the ordinance, so he can return to the amphitheater, may proceed.

We accordingly reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*